FILED
United States Court of Appeals
Tenth Circuit

February 12, 2013

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff–Appellee,

v.

SHAWN BATTLE,

      Defendant–Appellant.

No. 12-3005

---

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 5:97-CR-40005-SAC-1)**

---

Melody Evans (Cyd Gilman with her on the briefs), Office of the Federal Public
Defender, District of Kansas, Topeka, Kansas for the Defendant-Appellant.

James A. Brown (Barry R. Grissom with him on the brief), Office of the United States
Attorney, District of Kansas, Topeka, Kansas for the Plaintiff-Appellee.

---

Before **LUCERO**, **MURPHY**, and **HARTZ**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

---

Shawn Battle filed a motion for sentence reduction under 18 U.S.C. § 3582(c)(2) following Amendments 750 and 759 to the United States Sentencing Guidelines, which retroactively adjusted Battle's advisory Guidelines range. U.S.S.G. app. C, amends. 750 & 759. The district court granted the motion in part, granting a two-level reduction rather than the four-level reduction Battle requested. Although the court found at Battle's first sentencing that he was responsible for more than 1.5 kilograms of crack cocaine, the court did not make a specific quantity finding. At resentencing, the court held that Battle was responsible for 3.4 kilograms. We reject Battle's argument that the district court was barred from engaging in supplemental calculations of drug quantity in the § 3582(c)(2) proceeding. However, we agree that the record of the original sentencing, including the district court's prior findings, does not support the attribution of 3.4 kilograms to Battle. Exercising jurisdiction under 28 U.S.C. § 1291, we reverse and remand for resentencing.

**I**

In 1997, a jury convicted Shawn Battle of conspiracy to possess with intent to distribute 50 grams or more of cocaine base. Using the 1997 version of the Guidelines, Battle's Presentence Investigation Report ("PSR") calculated a base level of 38, determining that "at least 1.5 kilograms of cocaine base is directly attributable to [Battle]." In support of this determination, the PSR included the following paragraphs:

> 43. The investigative reports indicate Terrance Canteen made admission to distributing between 4 and 5 kilograms of cocaine base during his involvement in the conspiracy. Terrance Canteen estimated that he and James Culp sold 200 pieces of crack every 2 to 3 days over the course of the conspiracy. However, he related that approximately every other month, he, Shawn Battle, Anthony Timmons, Derek Burgess, and James Culp

-2-

would return to the New York area where they would remain for approximately one month. The U.S. Probation Office has used Mr. Canteen's most conservative estimate as to his entry into this conspiracy, which was approximately March, 1995, although there is information to show he was in Junction City, Kansas in 1994 or possibly 1993. Based on the defendant's statements that he was absent from distributing crack cocaine approximately half of the time, he would have been actively distributing crack cocaine for approximately 40 weeks during this conspiracy. Based on Mr. Canteen's admission as to how much he distributed (200 pieces at a weight of .10 grams per piece), on average of 2 to 3 times per week over the course of the entire conspiracy, Mr. Canteen and Mr. Culp were responsible for transacting approximately 1.6 kilograms of cocaine base (crack cocaine).

44. In determining the appropriate offense level, the U.S. Probation Office has reviewed the investigative reports and court testimony presented at trial of the codefendants in this case to establish the amount of drugs attributable to the defendant.

45. Based on Shera Jackson's and Anthony Timmons' reports of distributing approximately 2 to 3 kilograms of cocaine base over the course of the conspiracy, the U.S. Probation Office believes that at least 1.5 kilograms of cocaine base is directly attributable to the defendant.

46. Shera Johnson reported distributing 60 rocks of cocaine on average of 2 to 3 times per week, over the course of the conspiracy (156 weeks). A conservative estimate of one (1) rock of cocaine is .10 grams; multiplied by 150 (which represents the scope of the conspiracy), it reflects Ms. Johnson distributed approximately 1.8 kilograms of cocaine base. Ms. Johnson was being supplied the cocaine base by Shawn Battle, Anthony Timmons, Terrance Canteen, and James Culp.

At the time of Battle's original sentencing, 1.5 kilograms of crack or more incurred the highest base offense level under the Guidelines.

The PSR recommended that Battle be sentenced with a total offense level of 44 and a criminal history category of III, resulting in a Guidelines range of life imprisonment. Battle objected to the PSR, including its drug quantity calculation,

arguing that some co-conspirators' testimony was unreliable, pointing to inconsistencies among co-conspirators' estimates, disputing the length of time during which he was a member of the conspiracy, and noting that some of the quantities discussed in the PSR were duplicative. In response, the U.S. Probation Office pointed out that it used conservative estimates of drug quantity and concluded that despite Battle's objections, his "base offense level would not change, due to all estimates exceeding 1.5 kilograms."

At Battle's 1998 sentencing hearing, the district court concluded that although Battle's counsel had done their best to challenge the drug quantity attributable to Battle, it could not "attribute less than 1.5 kilograms of crack cocaine to the defendant without doing serious violence to the facts in th[e] case." Because Battle was found to be the head of a conspiracy to distribute crack cocaine, and during the course of the conspiracy, well over 1.5 kilograms of crack cocaine was actually distributed, such amount was foreseeable to Battle in his role as organizer or leader. In short, said the court,

> [A]lthough the members of the conspiracy did not keep meticulous records of the amount of their crack cocaine sales, it is clear from the number of persons participating in the scheme, the extensive utilization of the tools of the trade used to distribute the crack, and the admissions of the defendant's coconspirators that several kilograms of crack cocaine were actually distributed during the life of this conspiracy.

Although the district court concluded that Battle's base offense level was properly calculated, it reduced the total offense level to 42 and the criminal history category to II, which yielded a Guidelines range of 360 months' to life imprisonment. Battle was sentenced to 360 months' imprisonment.

In a written order, the district court formally adopted the PSR except where

specifically noted, concluding that the PSR "accurately calculates the amount of crack

cocaine attributable" to Battle:

> Based upon the evidence heard by this court at trial, the court is lead to the inescapable conclusion that well over 1.5 kilograms of crack cocaine was distributed by this conspiracy and that this amount was foreseeable to Shawn Battle as the head of that conspiracy. Therefore the full 1.5 kilograms is properly attributed to the defendant.
>
> First, the volume of drugs calculated in the [PSR] is consistent with the testimony of the defendant's coconspirators who testified at trial. From that evidence alone it is absolutely clear that persons operating at the defendant's direction or in concert with the defendant and other coconspirators were distributing substantial amounts of crack cocaine during the life of the conspiracy. Anthony Timmons, Shera Johnson and Terrance Canteen each admitted that they had personally been involved in the distribution of over 1.5 kilograms while a member of this conspiracy. Even without adding those amounts together, well over 1.5 kilograms of crack cocaine was distributed in this case. Second, the number of persons in the conspiracy, and the time, money and resources, such as telephones, pagers and apartments, used in distributing drugs circumstantially corroborates the court's conclusion that well over 1.5 kilograms of crack cocaine (the highest quantity considered in the guidelines and the [sic] consequently the highest base offense level) was distributed through the defendant's narcotics network. Third, the observations and information collected by law enforcement officers independently corroborates the sizeable volume of crack cocaine distributed by the defendant or his cohorts.
>
> In short, the defendant's extensive criminal enterprise distributed substantial amounts of crack cocaine—well in excess of 1.5 kilograms— over a several year period.

Battle appealed his conviction and sentence. We affirmed. See United States v.

Battle, 1999 U.S. App. LEXIS 18366 (10th Cir. Aug. 6, 1999) (unpublished). He was

denied habeas relief. See United States v. Battle, 2002 U.S. Dist. LEXIS 25073 (D. Kan.

Oct. 24, 2002) (unpublished).

-5-

In December 2011, Battle filed an unopposed motion under 18 U.S.C. § 3582(c)(2) seeking to reduce his sentence based on the retroactive amendment of the crack cocaine Guidelines. See U.S.S.G. app. C, amends. 750 & 759. Under the amended Guidelines, a finding that Battle was responsible for 1.5 kilograms of crack would correspond to a revised base offense level of 34 and a Guidelines range of 262 to 327 months. See U.S.S.G. § 2D1.1(c)(3). Battle argued that the court should find him eligible for a reduced sentence based on the 1.5 kilograms figure.

The district court rejected this argument. It concluded that the record did not sustain Battle's arguments for a single and determinative drug-quantity finding by the court, and determined that "the court's general findings of drug quantity and the evidence of record support additional calculations necessary for applying the guideline amendments involved in this § 3582(c) proceeding." Noting that the PSR did not purport to calculate and recommend a finding as to the total quantity of drugs, the court pointed out that the PSR merely "settle[d] on recommendations sufficient to meet the highest quantity of cocaine base that would carry the top base offense level in the drug quantity table." Citing its prior statements that Battle was responsible for "well in excess of 1.5 kilograms" and had engaged in a conspiracy to distribute "several kilograms," the court elected to make an additional quantity calculation from findings and evidence adopted at the original sentencing. It looked to paragraphs 43, 45, and 46 of the PSR, which attribute 1.6 kilograms of crack to co-conspirators Canteen and Culp, and 1.8 kilograms to co-conspirator Johnson. Combining these figures, the court determined that Battle was

-6-

responsible for 3.4 kilograms of crack. Using this 3.4 kilogram figure, Battle's base offense was 36, yielding a Guidelines range of 324 to 405 months. See U.S.S.G. § 2D1.1(c)(2). The district court imposed a new sentence of 324 months. Battle timely appealed.

## II

"The scope of a district court's authority in a resentencing proceeding under § 3582(c)(2) is a question of law that we review de novo." United States v. Rhodes, 549 F.3d 833, 837 (10th Cir. 2008). "We review for an abuse of discretion a district court's decision to deny a reduction in sentence under 18 U.S.C. § 3582(c)(2)." United States v. Sharkey, 543 F.3d 1236, 1238 (10th Cir. 2008). A district court abuses its discretion when it relies on an incorrect conclusion of law or a clearly erroneous finding of fact. See Kiowa Indian Tribe of Okla. v. Hoover, 150 F.3d 1163, 1165 (10th Cir. 1998).

## A

Federal courts generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). However, "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission," the court may reduce a previously imposed term of imprisonment "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(2).

Section 3582(c)(2) prescribes a two-step process. First, a district court must "determine the prisoner's eligibility for a sentence modification and the extent of the

-7-

reduction authorized." United States v. McGee, 615 F.3d 1287, 1292 (10th Cir. 2010) (quotation omitted). If a reduction is authorized, the court may "consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case." Id. (quotation omitted).

The Guidelines policy statements issued by the Sentencing Commission explain that § 3582(c)(2) proceedings "do not constitute a full resentencing of the defendant." U.S.S.G. § 1B1.10(a)(3). Instead, the Guidelines direct a district court to "determine the amended guideline range that would have been applicable to the defendant if the amendment(s) to the guidelines listed in subsection (c) had been in effect at the time the defendant was sentenced." § 1B1.10(b)(1). "In making such determination, the court shall substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected." Id.

In Dillon v. United States, 130 S. Ct. 2683 (2010), the Supreme Court emphasized the limited nature of a § 3582(c)(2) proceeding and noted that "[b]y its terms, § 3582(c)(2) does not authorize a sentencing or resentencing proceeding." Dillon, 130 S. Ct. at 2690. District courts do not "impose a new sentence in the usual sense," but merely reduce an otherwise final sentence in certain limited circumstances. Id. at 2690-91. "Section 3582(c)(2)'s text, together with its narrow scope, shows that Congress intended to authorize only a limited adjustment to an otherwise final sentence and not a

plenary resentencing proceeding." Dillon, 130 S. Ct. at 2691.

Consistent with its "narrow view" of the statute, id. at 2690, the Court held that district courts cannot recalculate aspects of a sentence that are unaffected by a retroactively applicable amendment to the Guidelines. See id. at 2694 ("Because the aspects of his sentence that [defendant] seeks to correct were not affected by the Commission's amendment to § 2D1.1, they are outside the scope of the proceeding authorized by § 3582(c)(2), and the District Court properly declined to address them."); see also McGee, 615 F.3d at 1290 (holding that § 3582(c)(2) does not permit district courts "to engage in full-scale resentencings of defendants"). Similarly, in Freeman v. United States, the Supreme Court noted that "the district court's authority under § 3582(c)(2) is subject to significant constraints." 131 S. Ct. 2685, 2693 (2011) (plurality opinion). Citing § 1B1.10(b)(1), the Court stated that "[a]ll Guidelines decisions from the original sentencing remain in place, save the sentencing range that was altered by retroactive amendment." Id.

**B**

Given the limited nature of § 3582(c)(2) proceedings, courts have struggled with the proper treatment of defendants who were originally sentenced on a finding of "at least" a certain drug quantity. Prior to the Sentencing Commission's adoption of Amendment 706 to the Guidelines, a defendant was subject to the highest base offense level if 1.5 kilograms or more of crack were attributed to him. See U.S.S.G. app. C, amd. 706. Because this court rejects assertions of errors in drug quantity calculations as

harmless if they do not affect the defendant's Guidelines range, see, e.g., United States v. Jeppeson, 333 F.3d 1180, 1182 n.2 (10th Cir. 2003), many district courts have acted in the interest of judicial economy and found that various defendants cross that 1.5 kilogram threshold without settling on a specific weight.

Our court considered this scenario in an unpublished decision, United States v. Valdez, 320 F. App'x 863 (10th Cir. 2009) (unpublished). Valdez stipulated in a plea agreement that his conduct involved "1.5 kilograms or more" of crack. Id. at 864. Because 1.5 kilograms was the highest Guideline cut-off at the time, the court did not make an express finding of quantity. Id. Several years later, Valdez filed a § 3582(c)(2) motion. The district court denied the motion, concluding that "the factual basis in the plea agreement and the unobjected-to presentence report established that Defendant was responsible for more than 4.5 kg of crack." Id. at 865.

On appeal, the panel affirmed the district court's determination, concluding that it may not have been necessary for the trial court "to make a separate, explicit quantity calculation" at the original sentencing. Id. at 865. But at resentencing, "the court did need to make a quantity calculation." Id. at 865-66. As the defendant had not filed any objection to the facts in the presentence report, "[i]t was proper for the court to rely at the § 3582 hearing on these findings it adopted at [the original] sentencing." Id. at 866.

Several circuits have considered this issue in published opinions. In United States v. Moore, 582 F.3d 641 (6th Cir. 2009), Moore had been held responsible for "at least 1.5 kilograms of cocaine base" at his original sentencing hearing. Id. at 642. Nearly eight

years later, Moore moved for a reduction in sentence under § 3582(c)(2). Id. at 643. The district court denied the motion, concluding that the original PSR, to which Moore had not objected, demonstrated that Moore was responsible for more than 4.5 kilograms. Id. at 644. The Sixth Circuit rejected Moore's argument that "the district court's previous determination of 'more than 1.5 kilograms' means that it cannot also find more than 4.5 kilograms." Id. at 646. Rather, "the district court could have made findings of fact based upon the PSR that would have provided a basis for rejecting Moore's motion on its merits." Id. at 645. However, the appellate court concluded that remand was appropriate "not because the district court must apply the reduction, but because no factual finding [from the first sentencing hearing] definitively linked Moore with 4.5 kilograms of cocaine base." Id. at 646.

In United States v. Woods, 581 F.3d 531 (7th Cir. 2009), defendants' PSRs, which were adopted by the district court, attributed more than 1.5 kilograms of crack to each defendant. Id. at 538. The district court later rejected defendants' § 3582(c)(2) motions, concluding that the defendants were responsible for more than 4.5 kilograms each. Id. In affirming, the Seventh Circuit held that district courts in § 3582(c)(2) proceedings cannot make findings inconsistent with that of the original sentencing court but may rely on the record of the original sentencing proceeding, including the PSRs adopted by the sentencing court and the original sentencing memoranda, to make supplemental findings "not inconsistent with the conclusion of the original sentencing court." Id. at 538-39.

The Fifth Circuit did the same in United States v. Hernandez, 645 F.3d 709 (5th

Cir. 2011). There, the district court determined at the original sentencing that "the quantity of drugs far exceeds the 1.5 kilograms needed to yield a total offense level of 39." Id. at 710. However, the PSR, which was later adopted by the district court, stated that "[b]ased on the most conservative estimate, Jason Hernandez is responsible for 32.5 kg of cocaine base." Id. (alteration in original). The district court rejected Hernandez's § 3582(c)(2) motion, and that rejection was affirmed on appeal because "the sentencing district judge adopted the 32.5 kilogram quantity found by the PSR, far beyond the 4.5 kg threshold needed for the highest offense level." Id. at 712; see also United States v. Taylor, 2010 U.S. App. LEXIS 10025, at *2-3 (11th Cir. 2011) (unpublished) (concluding that district court may rely on previous findings in § 3582(c)(2) proceedings, but remanding for resentencing because the original "factual findings do not reflect a finding that Taylor was accountable for more than 4.5 kilograms of crack cocaine"); United States v. Jones, 388 F. App'x 314, 315 (4th Cir. 2010) (unpublished) (determining that defendant was ineligible for sentence reduction because original sentencing court adopted the drug amounts in the presentence report (including 26.3 kilograms of crack cocaine) even though the district court only explicitly found defendant responsible for 1.5 kilograms of crack cocaine).

## C

We agree with the foregoing authorities that a district court's prior attribution of "at least" 1.5 kilograms of crack (or other similar language) to a defendant does not bind that court to a finding of exactly 1.5 kilograms in a subsequent § 3582(c)(2) proceeding.

We further agree that a district court may look to its previous findings, including any portions of a PSR adopted by the sentencing court, to make supplemental calculations of drug quantity at resentencing if such calculations are necessary to "determine the amended guideline range that would have been applicable" in light of a retroactive Guideline amendment. § 1B1.10(b)(1). However, because it is unnecessary to the resolution of this appeal, we need not decide whether the district court is permitted to engage in new fact-finding in determining the amended guideline range in a § 3582(c)(2) proceeding.

In the case at bar, we simply determine that the supplemental drug quantity calculations made by the district court at Battle's § 3582(c)(2) proceeding were unsupported by the facts found at his original sentencing. In reviewing a district court's § 3582(c)(2) resentencing decisions, we review the scope of a district court's authority de novo, Rhodes, 549 F.3d at 837, and its decision to deny a reduction in sentence for an abuse of discretion, Sharkey, 543 F.3d at 1238. Although a district court may estimate the amount of drugs attributable to a defendant, "[w]hen choosing between a number of plausible estimates of drug quantity, none of which is more likely than not the correct quantity, a court must err on the side of caution." United States v. Higgins, 282 F.3d 1261, 1280 (10th Cir. 2002) (quotation omitted); accord United States v. Forrester, 616 F.3d 929, 949 (9th Cir. 2010); United States v. Taylor, 111 F.3d 56, 59 (7th Cir. 1997); United States v. Sklar, 920 F.2d 107, 113 (1st Cir. 1990); United States v. Walton, 908 F.2d 1289, 1302 (6th Cir. 1990); see also United States v. Havens, 910 F.2d 703, 706

-13-

(10th Cir. 1990) (noting that the relevant question is what a defendant could have actually produced rather than the "theoretical maximum amount" producible from the chemicals involved).

Applying these standards to the case before us, we reverse the district court's conclusion that Battle was responsible for 3.4 kilograms of crack. The district court relied on paragraphs 43, 45, and 46 of the PSR in concluding that 3.4 kilograms was the correct weight. As noted in paragraph 43, Battle drifted in and out of the conspiracy, and the date he entered the conspiracy was unsettled. Accordingly, the PSR, which the district court adopted, does not attribute the entire amounts of crack to Battle that some of his coconspirators admitted to possessing. Paragraph 43 notes that co-conspirator Canteen admitted to distributing 4 to 5 kilograms of crack, but with respect to the period during which Battle was involved in the conspiracy, states that "Mr. Canteen and Mr. Culp were responsible for transacting approximately 1.6 kilograms of cocaine base."

The district court added this 1.6 kilogram figure to the 1.8 kilograms attributed to co-conspirator Johnson in paragraph 46. The court's decision to combine these totals is clearly in error. Although paragraph 46 states that "Johnson distributed approximately 1.8 kilograms of cocaine base," it also explains that "Johnson was being supplied the cocaine base by Shawn Battle, Anthony Timmons, Terrance Canteen, and James Culp." Accordingly, the 1.8 kilograms attributed to Johnson necessarily includes some portion of the 1.6 kilograms attributed to Canteen and Culp. A district court cannot count the same kilogram twice simply because it passed through the hands of two co-conspirators. See

United States v. Topete-Plascencia, 351 F.3d 454, 460 (10th Cir. 2003) (stating that drug quantity calculations must be undertaken "with no double counting involved").  These paragraphs demonstrate that Battle was responsible for somewhere between 1.8 and 3.4 kilograms, but given the complete absence of evidence of drug quantity within that range, the district court was required to "err on the side of caution," Higgins, 282 F.3d at 1280, and not rely on a "theoretical maximum amount" of cocaine base involved, Havens, 910 F.2d at 706.

The government argues that the district court permissibly concluded that Battle was responsible for at least 2.8 kilograms of crack (the cutoff for an offense level of 36) because the court stated at the original sentencing hearing that "several kilograms of crack cocaine" were distributed by the conspiracy.  According to the government, the term "several" constitutes an unequivocal finding that Battle was responsible for at least three kilograms.  This is too thin a reed upon which to base such a conclusion.  The government cites Webster's Third New International Dictionary (1993), which defines "several" as "an indefinite number more than two and fewer than many."  Id. at 2080.  Even were we to adopt this definition, "several" could refer to 2.7 kilograms or 3.4 kilograms.

On the record before us, we cannot properly attribute any quantity above 1.8 kilograms to Battle under a preponderance of the evidence standard.  By contrast, in Valdez, the defendant had stipulated to conduct that unequivocally involved more than 4.5 kilograms of crack.  320 F. App'x at 864-65.  This case stands closer to Moore, in

-15-

which the PSR did not specifically link Moore to 4.5 kilograms of crack.  582 F.3d at 645.  Moore had not admitted to facts beyond those in the PSR, and at sentencing the court "did not adopt any more specific factual findings regarding the quantity of crack Moore" had distributed.  Id.

## III

For the foregoing reasons, we **REVERSE** and **REMAND** to the district court for further proceedings consistent with this opinion.