**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 21, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

COLIN DEWONE BRUNER,

      Defendant-Appellant.

No. 11-6307
(D.C. No. 5:06-CR-00228-R-1)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **GORSUCH**, **MURPHY**, and **HOLMES**, Circuit Judges.

Defendant-Appellant Colin Bruner appeals from the district court's denial

of his motion for a sentence reduction under 18 U.S.C. § 3582(c)(2).  Mr. Bruner

seeks relief under Amendment 750 of the U.S. Sentencing Commission

("Sentencing Commission").  The district court held that Mr. Bruner was

ineligible for a reduction because the amendment had no effect on his U.S.

Sentencing Guidelines ("U.S.S.G.") range and, alternatively, that even if he had

been eligible for a reduction, the court would have denied his motion because of

---

[*]      This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

his extensive criminal history.  We agree with the district court that Mr. Bruner is ineligible for a sentence reduction and affirm on that basis alone.

## I

On May 9, 2006, an undercover officer purchased 28.8 grams of cocaine base (i.e., crack cocaine) from Mr. Bruner.  Two days later, the officer purchased 6.4 more grams of cocaine base and a handgun from him.  In total, the officer purchased a gross weight of 35.2 grams of cocaine base from Mr. Bruner.  Mr. Bruner was subsequently indicted for three crimes: (1) distributing approximately one ounce (i.e., approximately 28.35 grams) of cocaine base under 21 U.S.C. § 841(a)(1); (2) being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1); and (3) distributing an additional 6.4 grams of cocaine base under § 841(a)(1).  Mr. Bruner eventually entered into a plea agreement with the government and pleaded guilty only to the firearm count, while the drug-related counts were dismissed.

Pursuant to U.S.S.G. § 2K2.1(c)(1) (2006),[1] because Mr. Bruner's firearm possession was "in connection with the commission or attempted commission of

---

[1]     The Presentence Investigation Report ("PSR") used the 2006 version of the Guidelines.  *See* R., Vol. II, at 5 (PSR, dated Dec. 7, 2006).  Likewise, we cite the 2006 Guidelines when referencing Mr. Bruner's initial sentence.  *See United States v. Pedraza*, 550 F.3d 1218, 1221 (10th Cir. 2008) ("The district court is required to apply the guideline provisions in effect at the time of sentencing.").  With respect to Mr. Bruner's 18 U.S.C. § 3582(c) proceeding, we, like the parties, rely on the 2011 Guidelines that were controlling at the time of the proceeding.

another offense" (i.e., the distribution of cocaine base), U.S.S.G. § 2X1.1 applied. *See* R., Vol. II, ¶ 22, at 5–6. Section 2X1.1 directed that Mr. Bruner's base offense level be set according to the drug quantity table found at § 2D1.1(c)(6). Under the drug quantity table, "at least 35 [grams] but less than 50 [grams]" of cocaine base resulted in a base offense level of thirty, and "at least 20 [grams] but less than 35 [grams]" of cocaine base resulted in a base offense level of twenty-eight.[2] U.S.S.G. § 2D1.1(c)(5)–(6).

Relevant to this appeal is the drug quantity that the district court found in calculating Mr. Bruner's base offense level. There are a number of places in the record that address the subject of the drug quantity. First, the indictment charges separately that Mr. Bruner distributed approximately one ounce of cocaine base (i.e., approximately 28.35 grams) (Count One) and 6.4 grams of cocaine base (Count Three). Second, under the plea agreement, "the parties agree[d] that the

---

[2]     As relevant here, the Guidelines drug-quantity ranges include the first number and run up to—but do not include—the second. In the context of these proceedings, it is readily apparent that when Probation referred, in seemingly short-hand fashion, to a drug-quantity range as running from the first number "to" the second, it did not intend to deviate from the customary Guidelines understanding of such ranges, as running from the first number up to—but not including—the second number. The same holds true for the district court's similar, short-hand usage of an en dash to separate the first and second numbers in a Guidelines drug-quantity range. In other words, neither Probation nor the district court was actually referring to inclusive drug-quantity ranges that would encompass the second number. The parties have not voiced any confusion regarding this seemingly pellucid matter; in any event, it is not material to our analysis.

total amount of the cocaine base involved in [the] offense is at least 20 grams, but less than 35 grams." R., Vol. I, at 27 (Plea Agreement, filed Oct. 5, 2006). This agreement tracked the language in the 2006 Guidelines which specified that a range from twenty to (but not including) thirty-five grams would trigger a base offense level of twenty-eight. Third, drug quantity is mentioned in Mr. Bruner's PSR at least four times:

- In the "Charge(s) and Conviction(s)" section, the PSR notes that, in the written plea agreement, "the parties agree[d] that the total amount of the cocaine base involved in this offense is at least 20 grams, but less than 35 grams." *Id.*, Vol. II, ¶ 3, at 3.

- In the "Offense Conduct" section, the PSR describes that during a controlled buy, "[Mr.] Bruner handed the undercover officer [cocaine base], which later weighed out to be 28.8 grams." *Id.*, ¶ 8, at 4. The PSR states that two days later, during another buy, "[Mr.] Bruner then handed the undercover officer 6.4 grams of [cocaine base]." *Id.*, ¶ 11, at 4.

- Further, again in the "Offense Conduct" section, the PSR states, "The 35.2 grams of cocaine base that [Mr. Bruner] is accountable for is the gross weight." *Id.*, ¶ 14, at 5. "For guideline purposes, [Mr. Bruner] will be held accountable for the net weight of between 20 and 35 grams of cocaine base." *Id.*

- The PSR then calculated the base offense level and stated, "The base offense level in [§] 2D1.1(c)(6) calls for a base offense level of 28 based upon 20 to 35 grams of cocaine base for which [Mr. Bruner] is held accountable." *Id.*, ¶ 22, at 6.

As described above, Mr. Bruner's base offense level was calculated using what the United States Probation Office ("Probation") called the "net weight" of the drugs and what the parties agreed to in the plea agreement—i.e., a range from twenty up to (but not including) thirty-five grams of cocaine base. This net

weight resulted in a base offense level of twenty-eight. After the application of a two-level enhancement for possessing a dangerous weapon, and a three-level reduction for acceptance of responsibility, Probation calculated Mr. Bruner's total offense level as twenty-seven. Given Mr. Bruner's criminal history of V, his resulting Guidelines range was 120 to 150 months.[3] After he received the PSR, Mr. Bruner lodged certain objections with Probation and made these same objections in his sentencing memorandum to the district court; notably, however, he did not object to the PSR's factual recitation in the "Offense Conduct" section.

At Mr. Bruner's sentencing hearing, the district court ultimately arrived at the same Guidelines calculation that the PSR recommended—*viz.*, a total offense level of twenty-seven and a criminal history category of V, for a resulting Guidelines range of 120 to 150 months. The district court then imposed a 120-month term of imprisonment, followed by a three-year term of supervised release. As Probation subsequently recounted, "At sentencing, the [c]ourt found that [Mr. Bruner] was accountable for 20 to 35 grams of cocaine base. [T]he [c]ourt did not specify a single amount of cocaine base attributable to [Mr. Bruner] . . . ." *Id.*, Vol. I, at 70 (Prelim. Report for Consideration of Sentence Reduction, dated Oct. 28, 2011). Following his sentence, Mr. Bruner did not file a direct appeal.

---

[3] The PSR also noted that his firearm offense had a statutory maximum of 120 months' imprisonment.

In May 2008, upon Mr. Bruner's motion, the district court amended his offense level to twenty-five and his Guidelines range to 100 to 125 months based on Amendment 706. *See* U.S.S.G. app. C, amend. 706 (2007) (reducing the offense levels for most cocaine base offenses by two levels); R., Vol. I, at 66 (Order Regarding Mot. for Sentence Reduction, filed May 29, 2008). The district court reduced Mr. Bruner's sentence from 120 months' down to 100 months' imprisonment.

In October 2011, Mr. Bruner moved for a second reduction in his sentence—the motion at issue here—this time pursuant to Amendment 750. *See* R., Vol. I, at 67–69 (Mot. for Reduction of Sentence, filed Oct. 28, 2011); *see also* U.S.S.G. § 1B1.10(c) (2011) (listing Amendment 750, parts A and C only, as an amendment that makes defendants eligible for sentence reduction under § 3582(c)(2)). Attached to his motion for a reduction was a preliminary report by Probation that analyzed Mr. Bruner's eligibility for a sentence reduction based upon the drug range for which the district court found Mr. Bruner accountable (from twenty up to, but not including, thirty-five grams of cocaine base).

The preliminary report calculated Mr. Bruner's potential amended Guidelines ranges as follows:

- 20 to 22.4 grams of cocaine base, 70 to 87 months;

- 22.4 to 28 grams of cocaine base, 84 to 105 months;

- 28 to 35 grams of cocaine base, 100 to 125 months.

R., Vol. I, at 71.   The report then noted that "[i]f the [c]ourt chooses to hold the defendant responsible for 28 to 35 grams of cocaine base, the guideline range pursuant to the new amendment would remain the same as that which was used to reduce [Mr. Bruner's] original sentence on May 29, 2008," and "[Mr. Bruner] would be ineligible for a further sentence reduction." *Id.*

In Mr. Bruner's motion for a reduction in sentence, he argued that "[t]he amount of cocaine base attributed to [him] was calculated on [a] net weight of between 20 and 35 grams of cocaine base." *Id.* at 68 (quoting *Id.*, Vol. II, ¶ 14, at 5) (internal quotation marks omitted).  And, "[s]ince no higher amount was determined by the [c]ourt, the predicate amount of cocaine base for which [he] is accountable is 20 grams," such that "the base offense level applicable to the advisory guideline computation is reduced to 22." *Id.*  As provided in Probation's preliminary report, a base offense level of twenty-two would reduce Mr. Bruner's Guidelines range to seventy to eighty-seven months.

The government objected to a reduction of Mr. Bruner's sentence for two reasons.  First, it noted that Mr. Bruner had "already received a substantial break in his sentence through his plea agreement (30 months) and the reduction based on the previous crack cocaine amendments (20 months)." *Id*. at 76 (Resp. to Mot. for Reduction of Sentence, filed Nov. 3, 2011).  Second, it argued that "while [Mr. Bruner] may be eligible for . . . a reduction," *id.* at 73, his "dubious track record shows [that he] is likely to re-offend when released, thus triggering

concerns for public safety," *id*. at 77.

The district court issued a one-page order denying Mr. Bruner's motion. *See id.*, Vol. I, at 83 (Order Regarding Mot. for Sentence Reduction, filed Nov. 8, 2011). It found that Mr. Bruner "should be held responsible for 28–35 grams of cocaine base" and thus was "ineligible for a reduction." *Id.* Alternatively, it stated that "[i]n any event, considering [Mr. Bruner's] criminal history, the Court would deny the [m]otion." *Id.*

Mr. Bruner timely appealed.

## II

Mr. Bruner presents two issues for our consideration. First, he argues that the district court erred in exceeding the scope of its authority conferred by 18 U.S.C. § 3582 when it "enter[ed a] supplemental finding of fact" by finding that he should be held responsible for twenty-eight to thirty-five grams of cocaine base. Aplt. Opening Br. at 11. Second, he argues that the district court abused its discretion when it determined that it would also deny his motion because of his criminal history.

We hold that, because the district court had the power under these circumstances to make the supplemental drug-quantity calculation that it did, and because its supplemental calculation had a factual basis in the record, the district court did not err in finding Mr. Bruner ineligible for a sentence reduction. Because Mr. Bruner is ineligible for a sentence reduction, we need not reach the

-8-

second issue—*viz.*, whether the district court erred in alternatively holding that it would not have granted Mr. Bruner a sentence reduction under § 3582(c)(2) because of Mr. Bruner's "criminal history." R., Vol. I, at 83.[4]

**A**

Mr. Bruner specifically seeks reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(2), which provides:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o) . . . the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2).

The Guidelines policy statement that sets forth the method by which a district court must determine whether an amendment would result in a sentence reduction provides that "[a] reduction in the defendant's term of imprisonment . . . is not authorized under 18 U.S.C. § 3582(c)(2) if . . . [the] amendment . . . does not have the effect of lowering the defendant's applicable guideline range."

---

[4] We note that at oral argument, the government argued that we lack jurisdiction to consider this alternative question without first finding that Mr. Bruner is eligible for a sentence reduction. We need not address the government's contention given that we are affirming on the threshold question of Mr. Bruner's eligibility.

U.S.S.G. § 1B1.10(a)(2)(B);[5] *accord United States v. Corber*, 596 F.3d 763, 765–66 (10th Cir. 2010) ("Under [§ 1B1.10(a)(2)(B),] a sentence reduction is not authorized if [Amendment 750] does not have the effect of lowering the defendant's applicable guideline range." (citation omitted) (internal quotation marks omitted)).  However, "proceedings under 18 U.S.C. § 3582(c)(2) . . . do not constitute a full resentencing of the defendant."  U.S.S.G. § 1B1.10(a)(3); *see Dillon v. United States*, 130 S. Ct. 2683, 2690 (2010) ("By its terms, § 3582(c)(2) does not authorize a sentencing or resentencing proceeding.").

A district court must utilize a two-step process in evaluating a § 3582(c)(2) motion.  First, it must "determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized."  *United States v. Battle*, 706 F.3d 1313, 1317 (10th Cir. 2013) (quoting *United States v. McGee*, 615 F.3d 1287, 1292 (10th Cir. 2010)) (internal quotation marks omitted).  Second, "[i]f a reduction is authorized, the court may consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case."  *Id*. (quoting *McGee*, 615 F.3d at 1292) (internal quotation marks omitted).

_____

[5]  The policy statements in § 1B1.10 are binding on district courts and limit their authority to grant motions for reduction of sentences.  *See United States v. Darton*, 595 F.3d 1191, 1194 (10th Cir. 2010).

"The scope of a district court's authority in a resentencing proceeding under § 3582(c)(2) is a question of law that we review de novo." *United States v. Rhodes*, 549 F.3d 833, 837 (10th Cir. 2008). However, we review only "for an abuse of discretion a district court's decision to deny a reduction of sentence under . . . § 3582(c)(2)." *United States v. Osborn*, 679 F.3d 1193, 1195 (10th Cir. 2012).

**B**

In its order denying Mr. Bruner's motion for a sentence reduction under Amendment 750, the district court stated that "[b]ased on the [PSR, Mr. Bruner] should be held responsible for 28–35 grams of cocaine base resulting in a guideline range of 100–125 months. As a result, he is ineligible for a reduction." R., Vol. I, at 83. Mr. Bruner asserts that this decision constituted error because "[t]he district court did not [find a specific drug quantity] when it sentenced [him on] January 23, 2007." Aplt. Opening Br. at 11. To permit the district court to do so when deciding his § 3582(c)(2) motion, says Mr. Bruner, "is tantamount to reopening the original sentencing," *id.*, which, according to *Dillon*, "[§] 3582(c)(2) does not authorize," *id*. at 12.

For its part, the government argues that the PSR "held [Mr. Bruner] accountable for a total gross weight of 35.2 grams of crack cocaine, which involved two drug transactions—one for 28.8 grams and one for 6.4 grams," and since Mr. Bruner did not object to this factual recitation in the PSR, he "admitted

-11-

his accountability for those amounts." Aplee. Br. at 13.

We disagree with Mr. Bruner that the district court's supplemental drug-quantity calculation amounts to an impermissible re-opening of his original sentence. "[A] district court may look to its previous findings, including any portions of a PSR adopted by the sentencing court, to make supplemental calculations of drug quantity at resentencing if such calculations are necessary to 'determine the amended guideline range that would have been applicable' in light of a retroactive Guideline amendment." *Battle*, 706 F.3d at 1319 (quoting U.S.S.G. § 1B1.10(b)(1)). And this is precisely what the district court did here.[6]

At Mr. Bruner's original sentencing, the district court used a range from twenty up to (but not including) thirty-five net grams of cocaine base in calculating Mr. Bruner's base offense level. The parties agreed on this range in Mr. Bruner's plea agreement and it mirrored the Guidelines drug-quantity range for a base offense level of twenty-eight. The district court used this range despite the PSR's factual recitation that Mr. Bruner had sold 35.2 grams of cocaine base—what Probation described as the "gross weight."[7] Since the *entire*

___

[6] As was the case in *Battle*, we "need not decide whether the district court is permitted to engage in new fact-finding in determining the amended guideline range in a § 3582(c)(2) proceeding." *Battle*, 706 F.3d at 1319.

[7] For the purposes of calculating the drug quantity attributable to a defendant, the Guidelines contemplate the use of net weight—*viz.*, the drug quantity "does not include materials that must be separated from the controlled substance before the controlled substance can be used." U.S.S.G. § 2D1.1 cmt.

(continued...)

-12-

*range*—from twenty up to (but not including) thirty-five net grams—resulted in the same base offense level of twenty-eight, the district court had no reason to make a more specific finding regarding the exact drug quantity.[8]

To be sure, a more specific drug quantity could now be relevant. This is because the range from twenty up to (but not including) thirty-five grams of cocaine base now encompasses three different base offense levels, two of which would make Mr. Bruner eligible for a sentence reduction under Amendment 750, and one of which would not. *See* U.S.S.G. § 2D1.1(c)(7)–(9); R., Vol. I, at 71 (noting that 20 to 22.4 grams of cocaine base equals a base offense level of twenty-two; 22.4 to 28 grams of cocaine base equals a base offense level of twenty-four; and 28 to 35 grams of cocaine base equals a base offense level of twenty-six, Mr. Bruner's current range).

As previously stated, the PSR found Mr. Bruner accountable for 35.2 grams of gross-weight cocaine base; however, for Guidelines purposes, it attributed to

---

[7](...continued)
n.1. Notably, neither party asserts that the difference between gross weight and net weight is material to the resolution of this case. Indeed, the PSR holds Mr. Bruner accountable for a *net-weight* range of cocaine base that includes twenty-eight grams and a good bit more—specifically, a net-weight range from twenty up to (but not including) thirty-five grams of cocaine base.

[8] The situation was the same for the district court when Mr. Bruner received his first sentence reduction under Amendment 706 in 2008. Namely, there was no need to determine the exact drug quantity because the applicable drug range for the lowered base offense level of twenty-six remained from twenty up to (but not including) thirty-five grams.

him a net-weight range, from twenty up to (but not including) thirty-five grams of cocaine base. Because he did not contest these facts, they are deemed admitted. *See United States v. Hooks*, 551 F.3d 1205, 1217 (10th Cir. 2009) ("If a defendant fails to specifically object to a fact in the PSR, the fact is deemed admitted by the defendant and the government need not produce additional evidence in support of the admitted fact.").

With that in mind, it becomes clear that the PSR provided the district court with a sufficient factual basis to conclude that Mr. Bruner was responsible for a drug-quantity range from *twenty-eight* up to (but not including) thirty-five grams of cocaine base, thus rendering him ineligible for a sentence reduction.[9] Indeed, the uncontested PSR holds Mr. Bruner accountable for a drug-quantity range—that is, from twenty up to (but not including) thirty-five grams of cocaine base—that clearly encompasses the threshold drug amount, i.e., twenty-eight grams, that makes him ineligible for relief.[10]

---

[9] Supplemental drug-quantity findings in § 3582(c) proceedings must be supported by a preponderance of the evidence. *See Battle*, 706 F.3d at 1321 (holding that the district court's supplemental drug-quantity finding was made in error because it was not supported by a preponderance of the evidence).

[10] We also note that Mr. Bruner stipulated in his plea agreement to a drug-quantity range—at least twenty grams of cocaine base but less than thirty-five—that indisputably includes the threshold drug quantity that would result in no change to his Guidelines range (i.e., twenty-eight grams). *See* R., Vol. I, at 27. In other words, Mr. Bruner agreed to be held accountable for a drug quantity that precludes him from being eligible for a sentence reduction. However, we need not rely on the plea agreement as an arguable basis for finding Mr. Bruner

(continued...)

-14-

The district court did not need to determine a precise figure; it simply needed to determine whether the admitted facts in the PSR established, by a preponderance of the evidence, that Mr. Bruner was responsible for a drug quantity that would render him ineligible for a sentence reduction. *See United States v. Valdez*, 320 F. App'x 863, 865–66 (10th Cir. 2009) (holding that "the facts adopted by the [district] court [in the PSR] are sufficient to support a finding that Defendant was responsible for 4.5 kg or more of crack," making him ineligible for a sentence reduction); *cf. Battle*, 706 F.3d at 1319–21 (holding that the district court could rely on the PSR when calculating the drug quantity in a § 3582(c)(2) proceeding, but finding that the district court clearly erred in its calculation by double counting certain drug quantities found in the PSR). Indeed, Mr. Bruner does not specifically contend that the district court's supplemental drug-quantity calculation of twenty-eight up to (but not including) thirty-five grams was unsupported by the record. Rather, he argues that the district court did not have the authority to make such a supplemental drug-quantity calculation at all. As previously stated, this is simply incorrect. *See Battle*, 706 F.3d at 1319.

Because under the circumstances present here the district court had the authority to make a supplemental drug-quantity calculation, and because the PSR

---

[10](...continued)
ineligible for a sentence reduction. The information in the PSR alone comprised a sufficient basis for the district court's determination.

provided the court with an adequate basis from which to make the supplemental

drug-quantity calculation that it did, the district court did not commit reversible

error in denying Mr. Bruner's motion.

## III

We **AFFIRM** the district court's order denying Mr. Bruner's motion for a

sentence reduction.


ENTERED FOR THE COURT


Jerome A. Holmes
Circuit Judge