**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 2, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff – Appellee,

v.

JEREMY VAUGHN PINSON,

     Defendant – Appellant.

_____

UNITED STATES OF AMERICA,

     Plaintiff – Appellee,

v.

JEREMY VAUGHN PINSON,

     Defendant – Appellant.

No. 20-6050
(D.C. No. 5:07-CR-00023-R-1)
(W.D. Okla.)

No. 20-6051
(D.C. No. 5:06-CR-00114-R-1)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **MURPHY**, and **McHUGH**, Circuit Judges.
_____

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

In this consolidated appeal, Appellant Jeremy Pinson,[1] proceeding pro se, asks us to reverse the district court's denial of two identical motions to reduce her sentence under 18 U.S.C. § 3582(c)(1).[2] Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## BACKGROUND

### I.     Factual Background

In 2004, Pinson, just eighteen years old, pleaded guilty to embezzling almost $32,000 from a congressional campaign for which she worked. A year into serving her sentence in the Oklahoma Department of Corrections, Pinson sent a letter threatening then-President George W. Bush's life. After Pinson's resulting indictment in the Western District of Oklahoma, a jury convicted her of threatening the President of the United States.

While in prison awaiting sentencing, Pinson committed two other federal crimes. In December 2006, she falsely alleged to a Deputy United States Marshal that a fellow inmate planned to stab a United States District Judge. Just a few months later, Pinson sent a letter to a different United States District Judge threatening to harm one of the jurors who had sat on the jury that convicted her of threatening President Bush. After a federal grand jury indicted her of one count of making a false

---

[1] Although born biologically male, Pinson is a transgender woman. We therefore refer to her using her preferred pronouns.

[2] Because Pinson appears pro se, we liberally construe her pleadings but won't act as her advocate. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

statement (violating 18 U.S.C. § 1001(a)(2)) and one count of threatening a juror (violating 18 U.S.C. § 876(c)), Pinson pleaded guilty to both counts.

The district court held a consolidated sentencing hearing for Pinson's three offenses—the jury conviction for threatening President Bush and the guilty pleas for making a false statement and threatening a juror. *United States v. Pinson*, 542 F.3d 822, 827 (10th Cir. 2008). The district court sentenced Pinson to the statutory maximum on all three counts. *Id.* at 829. Pinson challenged her jury conviction and her sentences, but we upheld both. *Id.*

## II. Procedural Background

On November 27, 2019, Pinson emailed the prison warden to request compassionate release. R. vol. 1 at 64 ("Pursuant to the 'extraordinary and compelling circumstances' provision of the First Step Act I seek compassionate release consideration due to mental health diagnoses and conditions."). Though Pinson maintains that she never received a response, the warden denied her request on December 10, 2019.

On December 27, 2019, Pinson deposited in the prison mail system her Motion to Reduce Sentence Pursuant to 18 U.S.C. 3582 (the "Motion"), which the district court received and filed on January 21, 2020.[3] Pinson asserted numerous reasons to support compassionate release, including the "unusually large" upward variance to her sentence that she says the Tenth Circuit only "reluctantly upheld"; BOP's placing

---

[3] Pinson filed two identical motions, one for each of her criminal cases in the Western District of Oklahoma.

3

her in "the most dangerous prison facility then in operation"; her transgender status, which subjected her to serious violence by other inmates, including rape; her numerous suicide attempts; her sole surviving relative, her mother, being 61 years old and in "failing health"; and her successful rehabilitation. *Id.* at 57, 61–63.

On February 25, 2020, the Government responded, arguing that, because Pinson hadn't appealed the warden's denial of her request for compassionate release, she had failed to fully exhaust her administrative remedies. Alternatively, the Government argued Pinson's Motion failed on the merits.

On February 27, 2020, without awaiting a reply from Pinson, the district court dismissed her Motion. The district court concluded that by Pinson's failing to appeal the warden's denial, Pinson had "failed to establish that she exhausted her administrative remedies, a condition precedent to consideration of her request for compassionate release." *Id.* at 99. Further, the district court concluded that even had Pinson exhausted her administrative remedies, her "reduction of her sentence [was] not justified" under the First Step Act. *Id.* at 101. Specifically, the district court noted that the First Step Act precluded it from granting Pinson's Motion unless it found that she is no longer a danger to the community, which the court ruled would be "nearly impossible." *Id.* at 102. After receiving Pinson's one-page Reply,[4] the district court issued a second order dismissing her Motion for the same reasons stated in its earlier order.

---

[4] Due to a prison mail issue, Pinson didn't receive the district court's original order denying her Motion until after she had already mailed her Reply.

## DISCUSSION

Pinson challenges the district court's order dismissing her Motion on two grounds: (1) that the district court erred by concluding that she had failed to exhaust her administrative remedies; and (2) that the district court based its alternative merits ruling on "distorted" claims. Appellant's Opening Br. at 3.

Because the district court denied Pinson's Motion on the merits, we needn't consider whether she failed to exhaust her administrative remedies. Rather, like the district court, we will assume for purposes of this appeal that she adequately exhausted those remedies. Our inquiry thus focuses on the district court's merits determination that, after considering the First Step Act and the § 3553(a) sentencing factors, Pinson remains a danger to the community.

## I.    Standard of Review

We have yet to decide in a First Step Act case what standard of review applies when considering a challenge to a district court's denial of a § 3582(c)(1) motion based on dangerousness and the § 3553(a) factors. We will review for an abuse of discretion. We have reviewed similar challenges under § 3582(c)(1) for an abuse of discretion. *See United States v. Saldana*, 807 F. App'x 816, 818 n.4 (10th Cir. 2020) (citing *United States v. Piper*, 839 F.3d 1261, 1265 (10th Cir. 2016)) ("We review for abuse of discretion the district court's decision to deny an authorized sentence reduction [under § 3582(c)(1)]."). And we have long reviewed for an abuse of discretion challenges to sentence length under § 3582(c)(2). *See, e.g.*, *Piper*, 839 F.3d at 1265 (quoting *United States v. Osborn*, 679 F.3d 1193, 1195 (10th Cir. 2012))

("We review for an abuse of discretion a district court's decision to deny a reduction of sentence under 18 U.S.C. § 3582(c)(2).").

Further, other circuits have recently concluded that these kinds of challenges under the First Step Act should be reviewed under this deferential standard. *See, e.g.*, *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020) (quotation marks and citations omitted) (giving "deference to the district court's decision and not[ing] that reversal is not justified where the appellate court might reasonably have concluded that a different sentence was appropriate" because "compassionate release is discretionary, not mandatory, and [can] be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)."); *United States v. Kincaid*, 805 F. App'x 394, 395 (6th Cir. 2020) (brackets, quotation marks and citation omitted) ("[D]istrict courts have broad discretion to determine what sentence will serve § 3553(a)'s statutory objectives."); *United States v. Pawlowski*, 967 F.3d 327, 330 (3d Cir. 2020) (brackets in original) (quotation marks and citation omitted) ("[T]he compassionate-release provision . . . states that, under appropriate circumstances, the court may [not shall] reduce the term of imprisonment. Accordingly, we hold that the abuse-of-discretion standard applies."); *United States v. Rodd*, 966 F.3d 740, 747–48 (8th Cir. 2020) (brackets, quotation marks, and citations omitted) ("[W]e need only determine whether the district court abused its discretion in determining that the § 3553(a) factors weigh against granting [Movant's] immediate release. . . . Although [Movant] may disagree with how the district court balances the § 3553(a) factors in

6

adjudicating his compassionate-release motion, that is not a sufficient ground for reversal.").

Adopting the abuse-of-discretion standard, we will uphold the district court's ruling unless it "relie[d] on an incorrect conclusion of law or a clearly erroneous finding of fact." *Piper*, 839 F.3d at 1265 (quoting *United States v. Battle*, 706 F.3d 1313, 1317 (10th Cir. 2013)).

## II. The District Court Didn't Abuse Its Discretion In Denying Pinson's Motions

The First Step Act permits a court to reduce a prisoner's sentence if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," the court determines that "extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Commission policy statement identifies four categories of extraordinary and compelling reasons: "(A) Medical Condition of the Defendant," "(B) Age of the Defendant," "(C) Family Circumstances," and "(D) Other Reasons." U.S.S.G. § 1B1.13, cmt. n.1. But even when one of those extraordinary and compelling reasons applies, a court may not reduce a prisoner's sentence unless it determines that "[t]he

defendant is not a danger to the safety of any other person or to the community." *Id.*
§ 1B1.13(2).[5]

Though Pinson failed to classify her Motions under a particular category, it appears she sought relief based on her "Family Circumstances" and "Other Reasons." *See* R. vol. 1 at 61–63 (noting, among other things, her mother's age and failing health as well as her particular vulnerability in prison as a transgender woman). But the district court never considered Pinson's proffered extraordinary and compelling reasons, apparently because it determined that, regardless, the court "would find it nearly impossible to conclude that Ms. Pinson is not a danger to the safety of other people or the community." R. vol. 1 at 102. In support of its conclusion, the district court cited Pinson's "initial crimes" of threatening President Bush and a juror, which "indicat[ed] [a] propensity for violence"; an additional conviction for mailing a letter that threatened a Secret Service agent; and her disciplinary infractions while incarcerated, "including fourteen severe infractions and her most recent infraction— disruptive conduct–high—[which] occurred less than one year ago." *Id.*

---

[5] We recognize that some courts have concluded that passage of the First Step Act has reduced—or even eliminated—the relevance of the Sentencing Commission's policy statement. *See, e.g.*, *United States v. Fox*, 2019 WL 3046086, at *2–3 (D. Me. July 11, 2019) (collecting cases) ("I agree with the courts that have said that the Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive given the statutory change."). But while Pinson argued in the district court that the policy statement no longer binds federal courts, we have continued to refer to it in deciding challenges related to § 3582(c)(1). *See Saldan*a, 807 F. App'x at 819 (relying on the policy statement to resolve petitioner's appeal).

On appeal, Pinson challenges the district court's conclusion that she remains dangerous to the community. Specifically, Pinson argues that she was acquitted of her most recent disciplinary infraction; most of her disciplinary infractions "were repeated charges of self-harm such as suicide attempts"; and her crimes from nearly fifteen years ago no longer bear on her dangerousness to society. Appellant's Opening Br. at 3.

Having reviewed the district court's orders, the parties' briefing, and the applicable law, we conclude that the district court acted within its discretion in denying Pinson's Motions. Much of Pinson's challenge criticizes the district court's factual findings and conclusions, but Pinson falls far short of showing that the district court relied on clearly erroneous facts. To the contrary, the district court reasonably concluded that Pinson's history of violence and threats prevented it from finding that she is no longer a danger to others in the community. Accordingly, we won't disturb the district court's ruling.[6]

---

[6] To the extent Pinson challenges the district court's refusal to hold an evidentiary hearing concerning her dangerousness, we conclude the district court acted within its discretion by denying that request. *See* R. vol. 1 at 103 (requesting "a televideo evidentiary hearing"); Appellant's Opening Br. at 3 ("Further the district court did not allow [Pinson] an opportunity to factually rebut, with evidence, that the Goverments [sic] assertions were false or distorted or to present expert witnesses on the issue of her current dangerousness (i.e., a psychiatrist)."). An evidentiary hearing may be appropriate "when any factor important to the sentencing determination *is reasonably in dispute*." *Piper*, 839 F.3d at 1270 (emphasis added) (quoting U.S.S.G. § 6A1.3(a)). Because we conclude Pinson's dangerousness wasn't reasonably in dispute, the district court wasn't required to hold an evidentiary hearing.

**CONCLUSION**

For the foregoing reasons, we AFFIRM the district court's denial of Pinson's Motions and DISMISS this matter.

Entered for the Court


Gregory A. Phillips
Circuit Judge