**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 28, 2011

Lyle W. Cayce
Clerk

No. 09-40546

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JASON HERNANDEZ,

Defendant - Appellant.

Appeal from the United States District Court
for the Eastern District of Texas, Sherman Division

Before GARWOOD, ELROD, and SOUTHWICK, Circuit Judges.

PER CURIAM:

Jason Hernandez appeals a district court's denial of his motion for modification of his life sentence pursuant to 18 U.S.C. §3582(c)(2), relying on a recent amendment to the sentencing guidelines for crimes related to the possession and distribution of crack cocaine. Because the district court that sentenced Hernandez found that Hernandez was responsible for 32.5 kg of crack cocaine, an amount far in excess of the quantity that triggers the highest offense level under the current sentencing guidelines, we AFFIRM.

I.

In 1998, defendant-appellant Jason Hernandez was convicted after a jury

No. 09-40546

trial of one count of conspiracy to possess with an intent to distribute controlled substances and conspiracy to distribute controlled substances, including cocaine base (crack cocaine) in violation of 21 U.S.C. §845; and two counts of possession with intent to distribute cocaine base, in violation of 21 U.S.C. §841(a)(1).  The sealed pre-sentence report (PSR) states that "it was part of the conspiracy that members would obtain cocaine base, powder cocaine, marijuana and methamphetamine and arrange for transportation of these drugs to McKinney, Texas . . . [o]ne or more members of the conspiracy would convert cocaine hydrochloride into cocaine base."  The PSR set forth numerous occasions on which Hernandez knew that members of his criminal conspiracy transported powder cocaine and later cooked that powder into cocaine base. The PSR therefore concluded that "[b]ased on the most conservative estimate, Jason Hernandez is responsible for 32.5 kg of cocaine base."

Over Hernandez's objections, the district court adopted the PSR in its Statement of Reasons and during Hernandez's sentencing hearing, noting with respect to the conspiracy charge that "there is sufficient credible evidence to support the calculations of drug quantity as made by the probation officer." "In any event," the court went on to observe, "I think there is clearly evidence to— that the quantity of drugs far exceeds the 1.5 kilograms needed to yield a total offense level of 39." That latter finding was significant because under the then-prevailing sentencing guidelines, the highest offense level was imposed for crack cocaine quantities in excess of 1.5 kg. On October 2, 1998, Hernandez was sentenced to life imprisonment for the conspiracy count.  Hernandez later appealed his conviction and sentence.  Although he disputed the sufficiency of the evidence against him, he did not dispute the court's findings with respect to the quantity of cocaine for which the conspiracy was responsible.  This court affirmed his conviction on all grounds. *United States v. Hernandez*, 260 F.3d

No. 09-40546

621, 2001 WL 650227 (5th Cir. 2001) (unpublished).

Effective November 1, 2007, the United States Sentencing Commission adopted Amendment 706, which retroactively modified the guidelines ranges applicable to crack cocaine offenses to reduce the disparity between crack cocaine and powder cocaine offenses.   U.S.S.G. Supp. to App'x C, Amend. 706 (Nov. 1, 2009).  While the maximum offense level applied to a finding of 1.5 kg of crack when Hernandez was sentenced, it now applies to a finding of 4.5 kg of crack.  The amendment has no applicability to a defendant sentenced for more than 4.5 kg of crack. *See United States v. Duncan*, 639 F.3d 764, 767 (7th Cir. 2011) (recognizing that Amendment 706 affects only defendants who are responsible for distributing less than 4.5 kg of crack).

In 2008, Hernandez filed a motion pursuant to § 3582(c)(2) for reduction of his sentence consistent with the revised guidelines.  After requesting a response from the United States, the district court rejected Hernandez's argument.  Hernandez then moved in the district court for reconsideration and, nearly simultaneously, appealed to this court. The district court again rejected his claims, holding that the amendments to the sentencing guidelines had no effect on Hernandez's sentencing offense level and thus on his sentence, because the amount of crack cocaine for which he was responsible was far beyond the 4.5 kg threshold under the amended guidelines.[1]   Hernandez now appeals the district court's decision on reconsideration.

II.

As the Supreme Court recently has held, the scope of a proceeding under 18 U.S.C. §3582(c)(2) in cases like this one is extremely limited. *Dillon v. United*

---

[1] The district court also rejected Hernandez's claims on jurisdictional grounds, because Hernandez moved for reconsideration after taking an appeal to this court, and thus potentially deprived the district court of its jurisdiction.  Because the merits are properly before us on the defendant's timely appeal, we need not reach the issue of whether the district court was correct in this determination.

*States*, 130 S. Ct. 2683, 2687 (2010). It is black-letter law that a federal court generally "may not modify a term of imprisonment once it has been imposed." *Id.* However, Congress has allowed an exception to that rule "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. §3582(c)(2); *see also Freeman v. United States*, No. 09-10245, 2011 WL 2472797 (U.S. June 23, 2011) (reciting standard for sentence modifications). Such defendants are entitled to move for retroactive modification of their sentences. *Dillon*, 130 S. Ct. at 2690–91. In determining whether to modify the defendant's sentence, the district court is first required to find the amended guideline range that would have been applicable to the defendant if the relevant amendment had been in effect at the time of the initial sentencing. U.S.S.G. §1B1.10(a)(1). "In making such determination, the court shall substitute only the amendments listed in subsection (c) for the corresponding guidelines provisions that were applied when the defendant was sentenced, and shall leave all other guideline application decisions unaffected." U.S.S.G. §1B1.10(b)(1).

After the district court determines what the modified sentence would be, the district court is required to consider any applicable factors under 18 U.S.C. §3553 in deciding whether a sentence modification is "warranted in whole or in part under the particular circumstances of the case." *Dillon*, 130 S.Ct. at 2692. "Because reference to §3553 is appropriate only at the second step of this circumscribed inquiry, it cannot serve to transform the proceedings under §3582(c)(2) into plenary resentencing proceedings." *Id.* Thus, even if the defendant qualifies for sentence modification under the first step of the analysis, the decision whether to ultimately grant a modification is left to the sound discretion of the trial court. *Dillon*, 130 S. Ct. at 2692. The district

court's decision whether to reduce a sentence pursuant to §3582(c)(2) is reviewed for abuse of discretion. *United States v. Evans,* 587 F.3d 667, 672 (5th Cir. 2009) *cert. denied,* 130 S. Ct. 3426 (2010).

Applying those principles to this appeal, we hold that the district court did not abuse its discretion in refusing to modify Hernandez's sentence or in refusing to grant an evidentiary hearing to decide the amount of crack for which Hernandez was responsible.  On the record before us the sentencing district judge adopted the 32.5 kilogram quantity found by the PSR, far beyond the 4.5 kg threshold needed for the highest offense level.  Hernandez did not challenge that finding on appeal, as did one of his co-conspirators, James Dwayne Ortega. Thus, Hernandez's efforts to relitigate whether the penalty was properly applied are not cognizable at this stage, and his sentence cannot be modified. *See United States v. Shaw,* 30 F.3d 26, 29 (5th Cir. 1994) (observing that a §3582(c)(2) proceeding is not the appropriate vehicle for relitigating a sentencing issue); *see also United States v. Whitebird,* 55 F.3d 1007, 1011 (5th Cir. 1995) ("[A]  §3582(c)(2) motion is not a second opportunity to present mitigating factors to the sentencing judge, nor is it a challenge to the appropriateness of the original sentence."). A modification proceeding is not the forum for a collateral attack on a sentence long since imposed and affirmed on direct appeal. *Dillon*, 130 S. Ct. at 2692.[2]

Even assuming *arguendo* that Hernandez could challenge the drug quantity found by the sentencing judge in this proceeding, after a careful review of the record we conclude that the district court in the modification proceeding

---

[2] Nor, as Hernandez himself admits, does §3582(c)(2) permit the district court to have considered a reduction of his sentence to a term below the amended advisory guideline range in light of *United States v. Booker*, 543 U.S. 220 (2005).  That inquiry is also entirely foreclosed under *Dillon*.  *Id.* at 2687-89; *see also United States v. Doublin*, 572 F.3d 235 (5th Cir. 2009).

did not abuse its discretion in finding that Hernandez was responsible for more than 4.5 kilograms of crack, the trigger for the maximum penalty under the Sentencing Guidelines. *See United States v. Woods*, 581 F.3d 531, 539 (7th Cir. 2009) ("Had the original sentencing court found that the defendants were responsible for exactly 1.5 kilograms, we would have a different case, but a finding that the defendants were responsible for at least 4.5 kilograms is not inconsistent with the conclusion of the original sentencing court that the defendants were responsible for amounts in excess of 1.5 kilograms"); *see also United States v. Moore*, 582 F.3d 641, 646 (6th Cir. 2009) ("We do not agree with [the defendant] that the district court's previous determination of 'more than 1.5 kilograms' means that it cannot also find more than 4.5 kilograms").[3] Hernandez argues that ambiguity was raised about the amount of crack by the PSR and the district judge's comments at the sentencing hearing, and notes the government's concession in a co-conspirator's appeal that the amount of crack involved was less than 32.5 kg. However, even assuming there was some ambiguity about the amount of crack involved,[4] Hernandez does not and cannot dispute that one member of his conspiracy testified that he personally delivered

---

[3] Hernandez also argues that we should reverse and remand for a limited re-sentencing because of the alleged inconsistencies noted above, relying on this court's opinion in *United States v. Towe*, 26 F.3d 614, 617 (5th Cir. 1994). That case is inapposite. In *Towe*, the defendant's sentence was based on responsibility for a total weight of 28.26 pounds of phenylacetone. The record there showed that the 28.26 pounds contained some waste products which, pursuant to the sentencing guideline amendments at issue, could no longer be counted for the purposes of sentencing. The district court simply had not differentiated between the pure drug and waste products because, at that time, it made no difference to the sentence. Under that fact pattern, this court held that an evidentiary hearing was necessary to decide how much of the total weight was pure phenylacetone, and thus whether the defendant qualified for modification. Here, Hernandez has not claimed in this appeal that based on the record and the sources cited by the PSR it could not reasonably be concluded that he was responsible for more than 4.5 kg of crack. Under *Dillon*, that is where our inquiry ends.

[4] As we hold above, there was no such ambiguity, because the district court adopted the PSR in its entirety.

No. 09-40546

2.5 kg of crack, that another conspirator testified that "most" of the 12.5 kg of powder cocaine for which that conspirator was responsible was cooked into crack, that there was evidence of 15 kg of crack delivered by another conspirator, and that the PSR's calculations excluded further evidence of crack distribution by the conspiracy. *See United States v. Thomas*, 963 F.2d 63, 64 (5th Cir. 1992) (noting that in controlled substance convictions, the sentence is based not only on the amount involved in the offense for which the defendant was convicted, but also on the contraband involved in acts that were part of the same course of conduct or common scheme or plan as the offense of conviction).[5]

## III.

For the foregoing reasons, the judgment is AFFIRMED.

---

[5] To the extent Hernandez argues that the district court erred by accepting the PSR's assumption that the powder cocaine transported by members of the conspiracy was converted to a comparable amount of crack, this argument must be rejected. It is the law of this circuit that a district court is "permitted to convert a quantity of powder cocaine to a comparable amount of crack cocaine for sentencing purposes if the conversion was foreseeable to the defendant." *United States v. Burns*, 526 F.3d 852, 859 (5th Cir. 2008), citing *United States v. Booker*, 334 F.3d 406, 414 (5th Cir. 2003).