# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-41186

ROBERT ARREDONDO,

    Plaintiff - Appellant

v.

THE UNIVERSITY OF TEXAS MEDICAL BRANCH AT GALVESTON, doing business as UTMB Health, doing business as UTMB Correctional Managed Care; UTMB CORRECTIONAL MANAGED CARE; DONALD HLAVINKA; DEBORAH S. DANSBE; SHANA L. KHAWAJA; DAVID L. CALLENDER; OWEN MURRAY, in his official capacity,

    Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, SMITH, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Appellant Robert Arredondo ("Arredondo") sued his employer, the University of Texas Medical Branch at Galveston ("UTMB") and his supervisors for various claims brought under Title VII of the Civil Rights Act (42 U.S.C. § 2000e *et seq.*), the Family and Medical Leave Act ("FMLA") (29 U.S.C. § 2601 *et seq.*), and the Americans with Disabilities Act ("ADA") (42 U.S.C. § 12101 *et seq.*). Appellees moved for summary judgment on all claims which the district court granted. Arredondo appealed, filing *pro se*, to this

United States Court of Appeals
Fifth Circuit
**FILED**
February 18, 2020

Lyle W. Cayce
Clerk

No. 18-41186

court. For the reasons set forth herein, we DISMISS this appeal for want of prosecution for Arredondo's failure to adhere to the federal and our local rules of appellate procedure.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

**A. Facts**

The facts here are derived from the district court's order granting summary judgment. Arredondo was employed with UTMB from April 2007 to October 2013 as a mental health case manager at a psychiatric hospital, the Beauford H. Jester IV Unit. In that role, Arredondo was required to (a) meet with at least 200 patients per month; (b) promptly complete patient charts; and (c) document patients' suicidal and homicidal thoughts. Senior psychologist Shana Khawaja and mental health manager Donald Hlavinka supervised Arredondo.

In April 2013, Arredondo was notified that his position would change from exempt to non-exempt under the Fair Labor Standards Act. This change required him to clock-in and clock-out each day, to monitor the hours he worked, and to ask his supervisors for permission to work overtime. A week after this change, Arredondo worked overtime without permission. Those additional hours were not reported though Arredondo was orally warned by Hlavinka of the consequences resulting from inaccurate time reporting. He rarely met the 200 patient per month visitation quota—in May 2013, he saw only 26 patients; in June, 68 patients. Hlavinka routinely talked with Arredondo about his subpar performance and they met regularly to discuss ways to improve his performance.

Arredondo alleges that he applied for 46 promotions between 2007 and 2013 and was denied all of them. In early June 2013, Arredondo filed an internal complaint with the Office of Diversity and Inclusion complaining of these various denials for promotion. Deborah Dansbe, a senior human

resources consultant, reviewed eleven of those positions, meeting directly with Arredondo and with the hiring managers.

In that meeting with Dansbe, Arredondo said that he felt the hiring decisions were discriminatory because he did not understand why he was not selected. He also said that his seventeen years of experience warranted his hiring for those positions despite the interview or the qualifications for the positions. To be sure, he did not say that he was discriminated or retaliated against because he was a man or because he was disabled. Dansbe concluded her investigation and determined that the most qualified candidates had been selected for each job. The investigation closed because Dansbe could not substantiate Arredondo's claims.

Arredondo also met with Dansbe and senior mental health manager Tonya Campbell to discuss his interview skills. She said that he did not interview well and advised him how to improve his responses. On July 22, 2013, Arredondo applied to be a mental health clinician. The job listed several requirements including a master's degree in counseling, social work, or related fields and licensure, or that the applicant be eligible for licensure, as a professional counselor, social worker, or psychological associate. Campbell and three others interviewed eight applicants, including Arredondo. On July 24, 2013, UTMB informed Arredondo that he had not been selected for that position. UTMB instead hired Crystal McGown.

Later in the month, UTMB evaluated Arredondo's 2013 performance. Hlavinka summarized the reasons for Arredondo's below-standard rating: (a) he was excessively absent; (b) he did not meet the monthly patient quota; and (c) his clinical notes were unsatisfactory. In response, Arredondo filed a grievance claiming that the evaluation was unfair.

Unrelatedly, Arredondo requested permission to leave occasionally due to chronic insomnia. UTMB gave him the necessary paperwork for leave. It

received a copy from his physician indicating that he needed leave "one time a week for up to one day per episode." UTMB approved the request. Arredondo also asked to modify his schedule because of his diabetes. He met with his supervisors and UTMB's ADA coordinator, Lela Lockette-Ware. In that meeting, he asked for recovery time if his blood-sugar increased and to leave the premises during that time. He also expressed his concerns about storing insulin in his car during the day. Arredondo acknowledged that prior to the 2013 performance evaluation, he neither needed nor requested an accommodation. Lockette-Ware asked him to submit paperwork from his physician describing his diabetes and detailing the specific accommodations he needed. Arredondo never provided the paperwork. In the meantime, UTMB allowed Arredondo to use a flexible schedule with his supervisors' approval. He was allowed to leave and return to work without its counting as an unscheduled absence. Again, Arredondo did not submit the doctors' paperwork. Instead, he e-mailed the personnel department withdrawing his request and would "revisit the issue if his health circumstances changed."

In early October 2013, Khawaja noticed that Arredondo's patient encounters spiked in August and September. She audited his clinical records on October 2 and found that the patient charts were inaccurate, incomplete, and late. In August, Arredondo reported that he saw 362 patients but his records reflect that he saw only 205 patients. 157 patients were unaccounted for, if he in fact saw them. Arredondo said that the increase was from his participation in clinical groups but Khawaja said that those groups were no longer offered. He also did not document patients' suicidal or homicidal thoughts. Khawaja also said that several patient charts were duplicated vis-à-vis Arredondo's cutting and pasting the same note in every patient's chart. As a result, UTMB fired him on October 30, 2013.

No. 18-41186

On May 15, 2014, Arredondo filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). He said that he was discriminated and retaliated against because of his race, disability, age, sex, and national origin. The EEOC issued a right-to-sue letter in June 2016.

## B. Procedural History

Following the issuance of the EEOC's right to sue notice, on September 5, 2016, Arredondo filed suit against the school and two names the school apparently uses when it furnishes medical care to inmates: UTMB Correctional Managed Care and UTMB Healthcare Systems, Inc. He also named in his complaint five people who work for the school: Donald Hlavinka, Shana Khawaja, Deborah Dansbe, David Callender, and ophthalmologist Owen Murray. He amended his complaint on October 26, 2016 asserting Title VII, FMLA, Age Discrimination in Employment Act of 1967 ("ADEA") (29 U.S.C. § 621), and ADA claims. The next day, Arredondo filed a second amended complaint dropping the ADEA claims. The appellees moved for summary judgment on March 9, 2018. Arredondo filed a response in opposition to the motion for summary judgment on March 30, 2018. The district court granted the appellees' motion for summary judgment on all of Arredondo's claims. Arredondo timely appealed.

## II.   DISCUSSION

On appeal, Arredondo moved to introduce a supplemental appendix of materials into evidence. **ECF 26.** That motion was carried with the case; we address it now, and address why Arredondo's appeal fails in totality thereafter.

Arredondo seeks to admit three exhibits that include, *inter alia*, five years-worth of performance reviews, copies of awards and accolades that he received on the job, and internal emails between he and his supervisors. He posits that the district court's grant of summary judgment to UTMB "opened the door for rebuttal evidence to be entered on appeal . . . . " However, this is not so. This motion is denied because most of the documents produced in this

supplemental appendix were not first introduced to the district court and are therefore not part of the record on appeal. *See Tradewinds Environmental Restoration, Inc. v. St. Tammany Park, LLC*, 578 F.3d 255, 262 (5th Cir. 2009). Additionally, the motion was unnecessary with respect to the documents that do appear in the district court record but are not in the record excerpts appendix. *See* FED. R. APP. P. 30(a)(2). Thus, Arredondo's motion is improper and as such, is denied.

More generally, the appellees argue that this appeal should be summarily dismissed because Arredondo abandoned all of the issues for failure to cite to the record in his opening brief as required by Federal Rule of Appellate Procedure 28.

While we "liberally construe *pro se* briefs," it is true that parties filing appeals in this court, including those filing *pro se,* must adhere to the requirements of the Federal Rules of Appellate Procedure ("FRAP Rules"). *Clark v. Waters*, 407 F. App'x 794, 796 (5th Cir. 2011) ("Although we liberally construe *pro se* briefs, such litigants must still brief the issues and reasonably comply with the standards of Rule 28 in order to preserve them."); *see also United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994) ("[P]*ro se* litigants, like all other parties, must abide by the Federal Rules of Appellate Procedure."). Indeed, Rule 28(a) of the FRAP Rules requires an appellant to set forth his "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." FED. R. APP. P. 28(a)(8)(A). Likewise, our local rules require "[e]very assertion in briefs regarding matter in the record [to] be supported by a reference to the page number of the original record, whether in paper or electronic form, where the matter is found using the record citation form as directed by the Clerk of Court." 5TH CIR. R. 28.2.2. Failure to adhere to these rules usually results in dismissal of the appeal. *Id.* at R. 42.3.2 ("In all other appeals when appellant .

No. 18-41186

. . fails to comply with the rules of the court, the clerk must dismiss the appeal for want of prosecution.").

The appellees are correct that Arredondo's brief does not have the technical record citations that are required of appellate briefings. But, Arredondo argues that this should be overlooked because he cited to a list of the documents that he references throughout his brief at the very end. He also asks that we not be so strict in our adherence to these rules and asserts that doing so functionally deters parties who file appeals in this court *pro se* because they cannot afford counsel or, in Arredondo's case, their counsel of record withdraws representation within the requisite period to file a notice of appeal. Indeed, in his reply brief, Arredondo calls our attention to this dichotomy— that is strict procedural adherence on par with procedural due process. To be sure, those effects are present for those *pro se* litigants who proceed before this court and others *in forma pauperis* in criminal cases or are otherwise indigent in civil cases. Arredondo has not demonstrated that he is indigent.

Furthermore, citations to the record on appeal, as required by the federal appellate rules and our local rules, help us parse out the issues that are actually before us on appeal. For example, Arredondo provides legal support from this circuit and other jurisdictions in support of the issues that he raises but does not provide record citations. Indeed, one of the issues raised by Arredondo is that the district court erred in granting summary judgment to the appellee's because, in his view, they denied him rights under the FMLA. In response, the appellees correctly pointed out, with a proper record citation, that this issue was not properly preserved at the district court and thus, is not before us on appeal.

On the contrary, we can consider a *pro se* litigant's non-compliant brief when the non-compliance did not prejudice the opposing party. *Compare Grant v. Cuellar*, 59 F.3d 523, 525 (5th Cir. 1995) (declining to consider appellant's

non-compliant *pro se* brief because his "failure to articulate any appellate argument therefore deprived the [appellees] of their opportunity to address fully all the issues . . . .") *with Price v. Digital Equip. Corp.*, 846 F.2d 1026, 1028 (5th Cir. 1988) (considering plaintiff-appellant's *pro se* appellate brief that did not set forth an argument for the one issue on appeal in accordance with Fed. R. App. P. 28(a)(4) because the defendant-appellee was able to fully address that singular issue).

Here, the prejudice is clear. First, the four issues listed by Arredondo in the "Statement of Issues" section of his opening brief are not those addressed by the district court on summary judgment. Significantly, the issue statements Arredondo provides do not coincide with what he discusses in his brief and what he ultimately requests from this court—vacatur of the district court's order granting summary judgment to the appellees. Second, he also posits that in granting the appellees' motion for summary judgment, the district court found him "guilty of felonies without due process of law from the bench . . . ." The district court's grant of summary judgment did no such thing. Appellant's brief is not only non-compliant with the FRAP Rules and our local rules with respect to record citations, it is also confusing and layered with arguments that are not supported by the record.

What's more, beyond the imperfections of the briefing, the appellees correctly pointed out that Arredondo's claims fail for abandonment, waiver, lapse of time, or lack of evidentiary support. Particularly, the district court dismissed the Title VII claims against all five individual defendants because Title VII does not authorize claims against individuals and no evidence supports that they were proper parties to the suit in the first instance. On appeal, Arredondo argues that direct evidence supported his claims when he argued that his claims were supported by circumstantial evidence at the district court. Accordingly, that position is waived on appeal. Likewise, he

argues a "failure to accommodate" ADA claim that was not raised before the district court that is also waived on appeal. Furthermore, the district court correctly held that the claims that remain all failed for lack of evidentiary support.

## III.   CONCLUSION

For the foregoing reasons, we DISMISS this appeal for want of prosecution.