# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
November 2, 2020

Lyle W. Cayce
Clerk

No. 20-10360

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

JOE GARY RIVAS, JR.,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 6:02-CR-42-1

Before JONES, HAYNES, and HO, *Circuit Judges*.

PER CURIAM:*

Proceeding pro se, Joe Gary Rivas Jr., appeals the district court's denial of his motion for compassionate release/reduction in sentence under 18 U.S.C. § 3582(c)(l)(A)(i). For the following reasons, we AFFIRM.

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 20-10360

## I.    BACKGROUND

The facts of this case are not in dispute.  Rivas pleaded guilty to conspiring to import 5 kilograms or more of cocaine and 1000 kilograms or more of marijuana, in violation of 21 U.S.C. § 963.  The district court sentenced Rivas to life "in light of the amount of drugs involved," "the defendant's significant criminal history," and "his involvement" in committing the offense.

Rivas has previously appealed his sentence on three separate occasions: each time he argued for a reduction in sentence; each time we have denied relief.[1]  In March 2020, Rivas once again sought a sentence reduction. This time, he argued for compassionate relief based on extraordinary and compelling circumstances, under 18 U.S.C. § 3582(c)(l)(A)(i), and in accordance with U.S. Sentencing Guidelines § 1B1.13 (defining "extraordinary and compelling reasons").  Rivas maintained that he exhausted his Bureau of Prisons (the "BOP") administrative remedies, as required by statute, because thirty days expired before he received a response from the BOP.

Rivas asserted his grounds for compassionate relief as follows: (1) he suffered from uncorrectable congestive heart failure, which "substantially diminished his ability to provide for self-care"; (2) he was "75 years of age and experiencing serious medical deterioration in physical and mental health because of the aging process"; (3) he "served nearly twenty years of his life sentence"; and (4) although he had no wife or children, his nephew was

---

[1] *See United States v. Rivas*, 170 F. App'x 309, 310 (5th Cir. 2006) (per curiam); *United States v. Rivas*, 697 F. App'x 276, 277 (5th Cir. 2017) (per curiam); *United States v. Rivas*, 774 F. App'x 188, 188 (5th Cir. 2019) (per curiam).

willing to be his "care provider" if he was released.[2]  Notably, Rivas made only one reference to his knees in his motion, and COVID-19 was not discussed at all, despite the fact that the pandemic had already begun, and the governor of this state had declared a disaster on that basis a few days prior to Rivas's filing.

After reviewing the evidence, the district court remained "unpersuaded that Mr. Rivas' conditions [were] so detrimental to his well-being as to merit 'extraordinary and compelling reasons' for compassionate release."[3]  The district court observed that "[i]t is not extraordinary that a human being ages[,]" and there was little evidence to support Rivas's assertion that the aging process had diminished his ability for self-care.  The district court relied on the warden's response to Rivas's request (the "Warden's Report"), which acknowledged that Rivas had been "diagnosed with multiple chronic medical conditions," but noted that Rivas was "able to independently attend to the activities of [his] daily living."  Accordingly, the district court denied Rivas's motion for compassionate relief.  Rivas timely appealed.

## II.   Standards of review

We review the district court's decision to deny a motion for reduction of sentence for abuse of discretion.  *United States v. Hernandez*, 645 F.3d 709, 712 (5th Cir. 2011).  Under 18 U.S.C. § 3582(c)(l)(A)(i), a court may reduce a term of imprisonment, after considering the factors set forth in 18 U.S.C.

---

[2] Rivas also maintained that he did not pose a safety threat to others and had "strong community support."

[3] The district court also noted that "[c]ompassionate release is discretionary, not mandatory, and could be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)."

No. 20-10360

§ 3553(a), if it finds "extraordinary and compelling reasons [to] warrant such a reduction." In other words, if a court finds "an extraordinary and compelling reason for compassionate release," then it must "provide specific factual reasons, including but not limited to due consideration of the § 3553(a) factors, for its decision." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020) (footnote omitted). Additionally, a defendant seeking compassionate relief must fully exhaust all administrative rights to appeal, which requires presenting the request to the BOP before seeking a resolution in federal courts. 18 U.S.C. § 3582(c)(l)(A); *see also United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020), *petition for cert. filed*, No. 20-5997 (U.S. Oct. 7, 2020). After making such a request, the Director of the BOP can move for a reduction on the defendant's behalf. 18 U.S.C. § 3582(c)(l)(A). If the Director fails to do so, the defendant can bring his own motion—but only if the defendant either exhausts his administrative remedies with respect to that failure or waits thirty days from the day the warden of the defendant's facility received the request.[4] 18 U.S.C. § 3582(c)(l)(A).

For pro se litigants, like Rivas, "we liberally construe [their] briefs . . . and apply less stringent standards to [them] than to parties represented by counsel[.]" *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995) (per curiam). However, they "must still brief the issues and reasonably comply with the standards of [Federal Rule of Appellate Procedure] 28." *Id.*

## III. Discussion

On appeal, Rivas raises two new arguments supporting his motion for compassionate relief: (1) his knee problems render him unable to walk and

---

[4] This procedural requirement is mandatory but not jurisdictional. *See Franco*, 973 F.3d at 467.

require surgery; and (2) over 500 inmates at his prison have tested positive for COVID-19, and he is being exposed to the deadly virus.[5]

We decline to address these new arguments for the first time on appeal.[6] *See Estate of Duncan v. Comm'r of Internal Revenue*, 890 F.3d 192, 202 (5th Cir. 2018). Rivas was required to exhaust these two new arguments by filing a request with the BOP, but he failed to do so. Because the statutory language is mandatory—that a prisoner *must* exhaust their BOP remedy before filing in district court—we must enforce this procedural rule since the Government did not waive the exhaustion issue on appeal. *See Franco*, 973 F.3d at 468. Any holding to the contrary would effectively defeat the purpose of the exhaustion requirement and circumvent clear congressional intent. *See id.* ("Congress used clear language: *all requests* for compassionate release must be presented to the Bureau of Prisons before they are litigated in the federal courts." (emphasis added)).

We also conclude that the district court did not abuse its discretion in denying Rivas's motion for compassionate relief based on his other, properly-exhausted arguments. Though not dispositive, we are guided in our analysis by the commentary for U.S. Sentencing Guidelines § 1B1.13, which

---

[5] Rivas explains that *after* the district court denied his request, his "health took a turn for the wors[e][.]" Since then, he has fallen down twice, was unable to get up, spent several days in a local hospital where he was treated for "flu like symptoms," then spent over two months in the intensive care unit at the prison before being allowed to go back to his cell.

[6] Rivas did make a passing reference to his knees in his initial motion for compassionate relief at the district court level. He mentioned that he was confined to a walker because "his knees [had] now gone through the aging process and surgery ha[d] not been approved." This lone reference to his knees was insufficient to preserve Rivas's argument on appeal, *see F.D.I.C. v. Mijalis*, 15 F.3d 1314, 1327 (5th Cir. 1994), and it would prejudice the Government in considering it, *see Arredondo v. Univ. of Tex. Med. Branch at Galveston*, 950 F.3d 294, 298 (5th Cir. 2020).

considers: (1) the medical condition of the defendant, (2) the age of the defendant, (3) family circumstances, or (4) another extraordinary and compelling reason "other than, or in combination with" the previously stated reasons.    U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13 cmt. n.1(A)–(D); *see United States v. Gonzalez*, 819 F. App'x 283, 284 (5th Cir. 2020).

Regarding the medical condition of a defendant, who is *not* suffering from a terminal illness, additional factors are examined, including whether the defendant is suffering from a serious physical or medical condition, a serious functional or cognitive impairment, or physical or mental health deterioration because of the aging process.    U.S.S.G. § 1B1.13 cmt. n.1(A)(ii).  All of these factors must "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  *Id.*

Here, Rivas appears to argue that he has serious medical conditions that substantially diminish his ability to provide for self-care and from which he is not expected to recover.[7]  Unfortunately, Rivas does not demonstrate *how* these medical conditions substantially diminish his ability to provide for his own self-care,[8] nor does he provide evidence that he is not expected to recover from these conditions.  Indeed, the Warden's Report indicates that Rivas was "able to independently attend" to the activities of his daily life, despite his "multiple chronic medical conditions[.]"    The district court

---

[7] In his reply brief, Rivas maintains that his medical records consist of thousands of pages.  However, the only medical document contained in the record on appeal is a one-page summary of Rivas's health problems from the BOP's Health Services.  Moreover, that document appears incomplete—it identifies that it is only page 1 of 5.  Rivas indicates some difficulty in obtaining his records, but, again, provides little detail.

[8] The only such claim concerns his knees which we have already stated is a new argument we will not consider on this appeal.  *See Estate of Duncan*, 890 F.3d at 202.

relied on the Warden's Report, and we conclude the district court did not err in doing so.

Rivas also mentions that he is "75 years old . . . in poor health, suffering from major illnesses, stemming from congestive heart failure." He has spent over a decade in prison. Under the sentencing guidelines, a defendant may establish an extraordinary and compelling reason for a reduction in sentence for age-related reasons, if the defendant "(i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health *because of* the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13 cmt. n.1(B) (emphasis added).

We note that Rivas failed to explicitly raise age-related reasons as a basis for compassionate relief on appeal but, even if we considered this argument, we would conclude that he also failed to establish an extraordinary and compelling reason on these grounds. Though Rivas is indeed older than 65 and has served over 10 years in prison, he did not establish a serious deterioration in physical or mental health *because of* the aging process. Rivas, instead, focuses the thrust of his argument on the highly unusual circumstances caused by COVID-19.[9] As previously discussed, we will not consider Rivas's COVID-19 argument for the first time on appeal. Furthermore, the Warden's Report stated that Rivas's condition was "stable[,]" rather than rapidly deteriorating, prior to the widespread COVID-19 outbreak in the U.S.

---

[9] For instance, Rivas claims that he is "very susceptible to catching the virus" and "[a]ll medical information suggest[s] that [he] would not survive the COVID-19 virus infection."

No. 20-10360

Given the facts before us, we cannot conclude that the district court abused its discretion in denying Rivas's motion for compassionate relief.[10] Rivas failed to establish an extraordinary and compelling reason to warrant a reduction in sentence.

For the foregoing reasons, we AFFIRM.

---

[10] Rivas also complains that the Government's response brief was not timely because it was filed 31 days after his initial brief. Normally, "[t]he appellee must serve and file a brief within 30 days after the appellant's brief is served." FED. R. APP. P. 31(a)(1). We conclude that the Government's brief was timely because the 30th day fell on a Sunday, so the period extended to the next day. *See* FED. R. APP. P. 26 (a)(1)(C).