# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 29, 2025

Lyle W. Cayce
Clerk

No. 24-30236

_____

United States of America,

*Plaintiff—Appellee*,

*versus*

Roy Lee Jones, Jr.,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:20-CR-156-2

_____

Before Elrod, *Chief Judge*, and Higginbotham, and Southwick, *Circuit Judges*.

Patrick E. Higginbotham, *Circuit Judge*:

Defendant-Appellant Roy Lee Jones, Jr. appeals the district court's denial of his motion seeking a sentence reduction under Amendments 821 and 825 of the United States Sentencing Guidelines. Finding no reversible error, we AFFIRM.

No. 24-30236

## I.

Prior to his arrest, Jones was working as a distribution head for a methamphetamine-trafficking organization in North-Central Louisiana. The native Californian received considerable amounts of methamphetamine and other illicit substances from his California-based supplier, DeLewis Johnson IV.[1] Upon receipt of bulk drug shipments, Jones would sell the drugs to Willie Todd Harris, a co-defendant, who would then divide them among street-level dealers for final sale.

Over the course of the conspiracy, law enforcement officers uncovered significant evidence, including recorded phone calls and witness testimony, of Jones unpacking and redistributing large shipments of drugs he received from Johnson. It was only after this ten-month investigation that federal law enforcement officers initiated grand jury proceedings in the Western District of Louisiana, resulting in a five-count indictment.[2] Jones was charged under 21 U.S.C. §§ 841(a)(1) and 846 for conspiracy to distribute and possess with intent to distribute methamphetamine.[3]

---

[1] Johnson's drug supplier was a Mexican cartel. There were two others who were at the same "level" as Jones in Louisiana: James Cockerham ("Jamie") and Roderick Ross ("Tod"/"Twist"). These men would receive methamphetamine and other drugs from Johnson in bulk.

[2] The grand jury returned the indictment on July 22, 2020. None of the seven Defendants were charged under 21 U.S.C. § 848, the continuing criminal enterprise statute.

[3] Count One details that from February 10, 2019 to December 31, 2019, all of these individuals "knowingly and intentionally conspire[d] and agree[d] together to possess with intent to distribute fifty (50) grams or more of methamphetamine and five hundred (500) grams or more of a mixture and substance containing detectable amount of methamphetamine, a Schedule II controlled substance . . . ."

2

No. 24-30236

Jones and Johnson went to trial as co-defendants on November 8, 2021.[4] After a five-day trial, the jury convicted both. The initial presentence report (PSR) of January 12, 2022[5] computed Jones' initial offense level as 37 using § 2D1.1(c)(3) and § 3B1.1(a) of the Guidelines.[6] The PSR, however, did not apply USSG § 2D1.5, the base offense level calculation of the Guidelines, as Jones was not charged under 21 U.S.C. § 848. With an offense level of 37 and a criminal history category of I, the PSR recommended a Guidelines range of 210-262 months. The district court sentenced Jones to 210 months' imprisonment. Jones appealed his conviction and sentence. We affirmed on March 7, 2023.[7] The Supreme Court denied Jones' petition for a writ of certiorari on October 2, 2023.

On November 1, 2023, Amendment 821 added § 4C1.1 to the Guidelines,[8] and Amendment 825 applied it retroactively.[9] The Chief Judge for the Western District of Louisiana (Judge Terry A. Doughty) issued a district-wide standing order directing the clerk's office to notify previously-

---

[4] Neither Defendant testified at trial, but the defense theory put forth by counsel—and rejected by the jury—was that Jones only trafficked marijuana, not methamphetamine.

[5] The report was revised twice: on February 9, 2022 and April 8, 2022.

[6] From the computed weight of 21,010.09 kilograms of converted drug weight and USSG § 2D1.1(c)(3), 34 points were assessed as the base offense level. In addition, USSG § 3B1.1(b) was applied by the district court to the effect that 3 points were added for Jones' role in the conspiracy as a manager/supervisor and not as an organizer/leader.

[7] In a per curiam opinion, a panel of this court affirmed the district court and rejected a sufficiency of the evidence challenge, a drug quantity enhancement challenge, and a manager/supervisor challenge. *See United States v. Johnson*, No. 22-30119, 2023 WL 2388358, at *2 (5th Cir. Mar. 7, 2023).

[8] *See* U.S. Sent'g Guidelines Manual supp. app. C, amend. 821, pt. B (U.S. Sent'g Comm'n 2023).

[9] *See id.* at supp. app. C, amend. 825, pt. B.

sentenced defendants that had been identified by the U.S. Sentencing Commission of their potential eligibility for relief under Amendment 821.[10]

Jones filed a *pro se* motion for a sentence reduction under 18 U.S.C. § 3582(c)(2) on January 23, 2024. On January 31, 2024, the Probation Office filed a Retroactive Amendment 821 Worksheet, which found that Jones qualified for a USSG § 4C1.1 two-point reduction. On February 12, 2024, the U.S. Attorney's Office submitted a seven-page memorandum supporting Jones' sentence reduction; a little over a month later, Jones' court-appointed attorney submitted another memorandum in support.[11]

Three days later, Chief Judge Doughty denied Jones' 18 U.S.C. § 3582(c)(2) motion;[12] Jones' court-appointed attorney filed a motion for reconsideration.[13] The district court denied the motion, finding no "manifest errors of law or fact" in its initial order. Jones timely appealed.

## II.

This Court reviews a district court's decision of "whether to reduce a sentence pursuant to 18 U.S.C. § 3582(c)(2) for abuse of discretion, . . . its interpretation of the Guidelines *de novo*, and its findings of fact for clear

––––––––––––––––––––––––––––––

[10] This order also mandated the appointment of counsel.

[11] A federal court's order reducing a term of imprisonment based on the relevant portions of Amendment 821 must have an effective date of February 1, 2024. *See* USSG § 1B1.10(e)(2).

[12] Jones notes that the Probation Office's report was replaced on the same day that it was entered, albeit the new report was not the one the parties relied on in their memoranda. The new report calculated that he should not receive a downward adjustment of his offense level.

[13] In particular, the supporting motion for reconsideration objected to the fact that a continuing criminal enterprise was not included in the indictment, was not found by the jury at trial, and was not found at the original sentencing.

error."[14] "A district court abuses its discretion if it bases its decision on an error of law or a clearly erroneous assessment of the evidence."[15] Here, the district court declined to reduce Jones' sentence based on an interpretation of USSG § 4C1.1(a)(10) and found that Jones had engaged in a "continuing criminal enterprise" as defined in 21 U.S.C. § 848.

## III.

Section 4C1.1 of the Guidelines—titled "Adjustment for Certain Zero-Point Offenders"—read as follows at the time of Jones' conviction and sentencing:

> (a) ADJUSTMENT.—If the defendant meets all of the following criteria:
>> (1) the defendant did not receive any criminal history points from Chapter Four, Part A;
>> (2) the defendant did not receive an adjustment under §3A1.4 (Terrorism);
>> (3) the defendant did not use violence or credible threats of violence in connection with the offense;
>> (4) the offense did not result in death or serious bodily injury;
>> (5) the instant offense of conviction is not a sex offense;
>> (6) the defendant did not personally cause substantial financial hardship;
>> (7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

---

[14] *United States v. Henderson*, 636 F.3d 713 (5th Cir. 2011) (citing *United States v. Evans*, 587 F.3d 667, 672 (5th Cir. 2009)).

[15] *United States v. Smith*, 417 F.3d 483, 486-87 (5th Cir. 2005) (internal quotation marks and footnote omitted).

No. 24-30236

(8) the instant offense of conviction is not covered by §2H1.1 (Offenses Involving Individual Rights);
(9) the defendant did not receive an adjustment under §3A1.1 (Hate Crime Motivation or Vulnerable Victim) or §3A1.5 (Serious Human Rights Offense); and
(10) the defendant did not receive an adjustment under §3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848;

decrease the offense level determined under Chapters Two and Three by **2** levels.[16]

The Sentencing Commission's new portion of the Guidelines mirrored the language of 18 U.S.C. § 3553(f)(4), which became effective in 1994.[17] The parties here contest the meaning of § 4C1.1(a)(10). The district court interpreted it to require the defendant to have been involved in both a continuing criminal enterprise *and* to have received a § 3B1.1 aggravating role adjustment to be ineligible for a reduction.[18]

---

[16] In November 2024, § 4C1.1(a) was amended to split (10) asunder. *See* USSG § 4C1.1 (Nov. 2024) (providing the two-point reduction if "(10) the defendant did not receive an adjustment under § 3B1.1 (Aggravating Role); and (11) the defendant was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848"); USSG supp. app. C, amend. 831, at 287–88 (explaining that the amendment "makes technical changes" to "clarify the Commission's intention that a defendant is ineligible for the adjustment if the defendant meets either of the disqualifying conditions in the provision[.]").

[17] *See* USSG supp. app. C, amend. 821, pt. B ("[T]he Commission was . . . informed by existing legislation, including the congressionally established criteria for the statutory safety valve at 18 U.S.C. § 3553(f) . . . ."); *see also Pulsifer v. United States*, 601 U.S. 124, 151 (2024) (detailing the differences between § 3553(f)(1) and §3553(f)(4)). The Supreme Court noted that, "[a]s we have shown throughout this opinion, conjunctions are versatile words, which can work differently depending on context." *Id.*

[18] "Since 4[C]1.1(a)(10) has an 'and' between the adjustment under 3B1.1 and the continuing criminal enterprise in 21 U.S.C. § 848, the Court interprets Section 10 to require the defendant to be involved in both a continuing criminal enterprise and a 3B1.1 adjustment to be eligible."

No. 24-30236

The Government argues that, situated in the context of § 4C1.1(a), the § 3B1.1 adjustment and the continuing criminal enterprise finding are both part of a larger list of independently disqualifying conditions for reduction relief and that the district court misinterpreted the Guidelines. Jones assumes the district court's interpretation of the Guidelines was sound and contests only the district court's finding that Jones "engaged in a continuing criminal enterprise."[19]

This Court has found that, pursuant to § 4C1.1(a)(10), "*either* receiving a § 3B1.1 adjustment *or* engaging in a continuing criminal enterprise is sufficient to disqualify a defendant."[20] That is, a potential defendant is eligible for relief if all § 4C1.1(a) criteria are met—and § 4C1.1(a)(10) has two independently disqualifying conditions. A defendant could "fail" on one *or* both conditions with the same result: ineligibility for an offense level decrease.[21] As Jones received an aggravating role enhancement under § 3B1.1(b) as a manager or supervisor,[22] he was and remains ineligible for an offense level reduction under § 4C1.1(a).

---

[19] At the district court level, however, the Defendant made a substantial argument against the disjunctive interpretation of USSG § 4C1.1.(a)(10).

[20] *United States v. Morales*, 122 F.4th 590, 594 (5th Cir. 2024). *See also* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 119-21 (2012) (detailing the relevant portions of the Conjunctive/Disjunctive Canon).

[21] *Morales*, 122 F.4th at 597 ("If a defendant either received a § 3B1.1 enhancement or engaged in a continuing criminal enterprise, he is disqualified from receiving the reduction.").

[22] The sentencing judge saw Jones as someone who was in the "middle" of the conspiracy, but not at the very top end (i.e., the "big dog"). Jones does not contest the validity of this finding on appeal.

## IV.

The district court erred by not reading each half of § 4C1.1.(a)(10) as an independent condition of eligibility. The district court found that Jones had "engaged in a 'continuing criminal enterprise' as a person who (1) violates the Drug Abuse Prevention and Control Chapter (Chapter 13), for which the crime is a felony, and (2) the violation was undertaken by the person in concert with five or more persons to which such person occupies a position of organizer . . . and from which such person obtains substantial income or resources."

## A.

Jones argues that the district court erred by finding that he engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848. He asserts that in a retroactive motion for reduction, a factual finding "re-opens" the sentencing determinations, contrary to decisions of this Court and the Supreme Court. The Government responds that the plain language of USSG § 4C1.1 requires the sentencing judge to make certain factual findings, regardless of whether they did so at the initial sentencing. And, the Government argues that a defendant *sentenced* under 21 U.S.C. § 848 may not receive an aggravating role enhancement under § 3B1.1.[23]

The Guidelines' commentary is binding.[24] If a defendant is convicted by a jury or pleads guilty to 21 U.S.C. § 848, then the district court's application of USSG § 2D1.5 precludes the simultaneous application of

---

[23] The corresponding Guidelines section is § 2D1.5. *See* USSG § 2D1.5, comment. (n.1) ("Do not apply any adjustment from Chapter 3, Part B (Role in the Offense).").

[24] *United States v. Vargas*, 74 F.4th 673, 680-81 (5th Cir. 2023) (en banc) (concluding that *Kisor v. Wilkie*, 588 U.S. 58(2019), did not clearly overrule *Stinson v. United States*, 508 U.S. 36 (1993)).

USSG § 3B1.1.[25] Under Jones' preferred reading of § 4C1.1(a)(10), *no one* convicted of a continuing criminal enterprise would have an aggravating role under § 3B1.1 and thus be denied a two-point offender level reduction.

The Government asserts that a defendant receiving a § 3B1.1 enhancement would never be subjected to the relevant continuing criminal enterprise Guideline subsection. This is true at the *sentence reduction phase* if one treats the application of the Guidelines' base-level offense section for 21 U.S.C. § 848 as synonymous with a judicial fact-finding that a defendant engaged in a continuing criminal enterprise.

## B.

It is undisputed that Jones was convicted by a jury under 21 U.S.C. §§ 841(a)(1) and 846 for conspiracy to distribute and possession with intent to distribute methamphetamine. At his sentencing, there was no reason for the district court to apply USSG § 4C1.1 (because it did not then exist) or USSG § 2D1.5 (because Jones was not convicted of the concomitant offense). When Amendments 821 and 825 of the Sentencing Guidelines became operative, *that* was the moment that there would be a question of whether any given defendant had engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848. Prior to that, there was no reason for the district court to make a judicial fact-finding concerning this.[26]

---

[25] The Government also observes that § 2D1.1 (the Guidelines base level offense section for 21 U.S.C. § 846 violations) has no cross-reference to § 2D1.5, so for defendants convicted of a § 846 offense at trial, there would never be reason for a district court to make a continuing criminal enterprise factual finding at sentencing.

[26] Of course, with USSG § 4C1.1 now in effect, this is something a district court would consider for all future sentencings. At the time of Jones' sentencing, however, whether his actions qualified as a continuing criminal enterprise would have had no reason to be on the sentencing Judge's radar.

Here, Jones moved under 18 U.S.C. § 3582(c)(2) for a discretionary sentence reduction.[27] Under *Dillon v. United States*, a district court two-stepping under this statute "does not impose a new sentence in the usual sense."[28] The district court must first follow the Sentencing Commission's instruction in USSG § 1B1.10 to determine the prisoner's eligibility for a sentence modification and the extent of the reduction allowed.[29] At this point, there is a substitution of certain applications, per USSG § 1B1.10(b)(1), and a "floor" is established for a reduction, per USSG § 1B1.10(b)(2)(A).[30] Second, a district court is instructed to consider any applicable 21 U.S.C. § 3553(a) factors.[31]

Because of this, the Supreme Court concluded that the interests implicated by *United States v. Booker* are not present at discretionary resentencing because of 18 U.S.C. § 3582(c)(2)'s position in the landscape of federal law as a "congressional act of lenity[.]"[32] In particular, "proceedings under § 3582(c)(2) do not implicate the Sixth Amendment right to have essential facts found by a jury beyond a reasonable doubt."[33] In

---

[27] *See United States v. Doublin*, 572 F.3d 235, 236-37 (5th Cir. 2009); *Dillon v. United States*, 560 U.S. 817, 826-27 (2010).

[28] 560 U.S. at 827.

[29] *Id.*

[30] *Id.* This applies unless the sentencing court originally imposed a term below the previous Guidelines range.

[31] *Id.* at 827-28. A sentence reduction in this light is "a narrow exception to the rule of finality[.]" *Id.* In a later opinion, the Supreme Court noted that "[t]he Sentencing Commission may limit the application of its retroactive Guidelines amendments through its 'applicable policy statements' . . . . But policy statements cannot make a defendant eligible when § 3582(c)(2) makes him ineligible." *Koons v. United States*, 584 U.S. 700, 707 (2018) (internal citation omitted).

[32] *Dillon*, 560 U.S. at 828.

[33] *Id.* Continuing, the Supreme Court noted that, "any facts found by a judge at a § 3582(c)(2) proceeding do not serve to increase the prescribed range of punishment; instead, they affect only the judge's exercise of discretion within that range." *Id.* In the

No. 24-30236

short, the sentence-modification proceedings of § 3582(c)(2) are outside the *Apprendi* framework and "are readily distinguishable from other sentencing proceedings."[34]

## C.

Jones argues that the sentencing judge in his case "improperly re-opened the original sentencing factual and guideline determinations[,]"citing to three Fifth Circuit cases: *United States v. Shaw*,[35] *United States v. Whitebird*,[36] and *United States v. Hernandez*.[37] None support his argument.

Jones cites to *Shaw* for the conclusion that a § 3582(c)(2) motion is not the "appropriate vehicle" for relitigating a "sentencing issue".[38] This statement in *Shaw* was made in the context of whether the district court erred in concluding that Shaw was manufacturing L-methamphetamine and not regular methamphetamine—a choice that did not entail a retroactive application of a lowered Guidelines range.[39]

Drawing on *Whitebird*, Jones points to its observation that, "[a] § 3582(c)(2) motion is not a second opportunity to present mitigating factors

---

earlier groundbreaking decision *Apprendi v. New Jersey*, the Supreme Court observed that "judges in this country have long exercised discretion of this nature in imposing sentence *within statutory limits* in the individual case." 530 U.S. 466, 481 (2000). *See also Williams v. New York*, 337 U.S. 241, 246 (1949) (observing the tradition of a sentencing judge's discretion with fixed limits in law from the colonial era to the present).

[34] *Dillon*, 560 U.S. at 830.

[35] 30 F.3d 26 (5th Cir. 1994).

[36] 55 F.3d 1007 (5th Cir. 1995).

[37] 645 F.3d 709 (5th Cir. 2011).

[38] 30 F.3d at 29.

[39] *Id.* This was an issue that the defendant "admit[ted] she failed to bring up at sentencing." *Id.* The question of whether Jones engaged in a continuing criminal enterprise was never asked or answered in the original sentencing.

to the sentencing judge, nor is it a challenge to the appropriateness of the original sentence."[40] This Court in *Whitebird* further noted, however, that this motion "is simply a vehicle through which appropriately sentenced prisoners can urge the court to exercise leniency to give certain defendants the benefits of an amendment to the Guidelines."[41] To have any force, one must assume that a factual finding at the post-sentencing reduction phase—which the Supreme Court has distinguished as distinct from a resentencing—is equivalent to the original sentencing.

Finally, from *Hernandez*, Jones presents the following: "Hernandez's efforts to relitigate whether the penalty was properly applied are not cognizable at this stage, and his sentence cannot be modified."[42] Very true. This Court upheld the "sound discretion" of the trial court because the *defendant* was trying to relitigate whether the penalty was properly applied and lobbying for a sentence modification.[43] Here, the trial court was not modifying Jones' sentence. Rather, the sentencing judge was exercising his sound discretion in finding that Jones had engaged in a continuing criminal enterprise.  Jones argues that this finding violated USSG § 1B1.10, *Dillon*, and Fifth Circuit precedent. He further notes that "none of the original sentencing proceedings or guideline determinations found" this fact, in the absence of a jury finding. This argument fails given the requirements of USSG § 4C1.1.(a).[44]

––––––––––––––––––––––––––––

[40] 55 F.3d at 1011.

[41] *Id.*

[42] 645 F.3d at 712.

[43] *Id.*

[44] For the remainder of the opinion, the now-current version of USSG §§ 4C1.1(a)(1)-(11) will be used for clarity.

No. 24-30236

**D.**

First, the language of USSG § 4C1.1.(a) contains explicit references to prior sentencing determinations (such as in §§ 4C1.1.(a)(1), (2), (9) and (10)). In addition, a second set of subparts of USSG § 4C1.1(a) requires the sentencing judge to examine "the instant offense of conviction" (such as in §§ 4C1.1(a)(5) and (8)). A third category of subparts requires the sentencing judge to examine the presented facts (such as in §§ 4C1.1(a)(3), (4), (6), (7), (8), and (11)).

Under the canon of consistent usage, "a given term is used to mean the same thing throughout a statute."[45] A sentencing judge must do three things to evaluate a § 3582(c)(2) motion: examine prior Guidelines applications, examine the instant offense of conviction, and examine the broader universe of facts to see if other portions of the Guidelines apply. When the Sentencing Commission chose each word, it did so carefully and with the aim of directing the sentencing judge to approach each subsection distinctly while evaluating USSG § 4C1.1(a) eligibility.[46]

Unlike the other portions of § 4C1.1(a), subsection (11) does not cross-reference past applications of the Guidelines (specifically, § 2D1.5), and under § 2D1.1 there is no explicit cross-reference for defendants convicted under 21 U.S.C. § 846 but whose conduct amounted to a violation of 21 U.S.C. § 848.[47] The force of USSG § 4C1.1 is to direct judges to find facts

---

[45] *Brown v. Gardner*, 513 U.S. 115, 118 (1994). *See also* SCALIA & GARNER at 170-173.

[46] *See Nken v. Holder*, 556 U.S. 418, 430 (2009) (noting that, "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 432)).

[47] In addition, an application of § 2D1.5 would have raised the base level offense to 38 and possibly triggered a mandatory minimum of twenty years or more. As such, *Apprendi* would likely bar this result. 530 U.S. at 490. *Apprendi* could be triggered because a finding that the defendant engaged in a continuing criminal enterprise at the initial sentencing

13

from the evidence presented at trial and sentencing that, by a preponderance of the evidence, determine the defendant engaged in a continuing criminal enterprise.[48] Indeed, the Supreme Court has re-affirmed in numerous cases that "broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment."[49]

This Court has previously found no reversible error in a district court's finding of a leadership role in the offense based on information in the PSR.[50] Here, the reliability of the information in Jones' PSR, which concluded that the drug weight was 21,010.09 kilograms, as well as his role in the distribution network, was effectively unrebutted.[51] The district court found that Jones' actions had qualified for the second prong of § 4B1.1(a)(10) (now (a)(11)). The district judge—who presided over the jury trial—had reams of witness testimony, over 11,000 recorded phone calls, and the PSR's drug weight calculations, which put Jones squarely in the middle of this long-running, high-volume drug distribution conspiracy. Given the volume of evidence at trial, the length of the investigation, and the post-trial fact-

---

phase could raise the Guidelines range, thus qualifying as a "fact that increase[s] the prescribed range of penalties to which a criminal defendant is exposed." *Id.* (quoting *Jones v. United States*, 526 U.S. 227, 252-53 (1999)).

[48] *See* USSG § 6A1.3, comment. ("The Commission believes that use of a preponderance of the evidence standard is appropriate to meet due process requirements and policy concerns in resolving disputes regarding application of the guidelines to the facts of a case."). The Sentencing Commission continues, concluding that, "[a]ny information may be considered, so long as it has sufficient indicia of reliability to support its probable accuracy." *Id.*

[49] *Alleyne v. United States*, 570 U.S. 99, 116 (2013).

[50] *See United States v. Lopez*, 217 Fed. App'x 406, 408 (5th Cir. 2007) (per curiam). The *Lopez* Court affirmed the district court's decision that Lopez had a leadership role in the offense because it found that Lopez did not rebut the "presumed reliability of the information contained in the PSR." *Id.*

[51] Jones' rebuttal rested on the phone calls in evidence not being from him, the calls' general vagueness, and the fact that there were bigger players in the conspiracy.

gathering conducted by the Probation Office, it is clear that the district court was swimming in a veritable ocean of facts.

Jones cites to *Richardson v. United States*, a case requiring a jury in a 21 U.S.C. § 848 trial to maintain unanimity with respect to each individual "violation" of the act.[52] He uses *Richardson* to argue that three violations is the minimum number needed in such a circumstance.[53] While this interpretation of § 848 controls, as this is a 28 U.S.C. § 3582(c)(2) ruling, judicial fact-finding apart from the jury is permissible. It appears that the district court viewed one conviction under 21 U.S.C. §846 as sufficient. Given *Richardson*, the district court was mistaken.

In light of the universe of facts—the numerous unrebutted witness testimonies of drug drops and pickups paired with recorded phone calls—the sentencing judge did not err in finding that Jones engaged in a continuing criminal enterprise. We review the district court's findings of fact for clear error.[54] Surveying the weight and volume of evidence, it is clear that over the course of the conspiracy, which was surveilled for ten months, Jones committed at least three violations of the Drug Abuse Prevention and Control Act.

With a calculated drug weight of 21,010.09 kilograms, for Jones to have been involved in a conspiracy this large while committing only one or two violations of relevant law is a murky conclusion at best.[55] The elements of a continuing criminal enterprise were established. Given the sheer volume of high-level drug-trafficking evidence indicating Jones' significant

---

[52] 526 U.S. 813, 824 (1999).

[53] *Id.* at 817-18 ("We assume, but do not decide, that the necessary number is three, the number used in this case."). In this context, as in baseball, one is not a series.

[54] *Henderson*, 636 F.3d at 717.

[55] Even if Jones had only dealt marijuana, as he argued at different times during the proceedings below, he would still be in violation of the subchapters referenced in 21 U.S.C. § 848.

No. 24-30236

involvement, the district court did not err in finding that Jones engaged in a continuing criminal enterprise—albeit erring in the reading of § 848 itself.

## V.

Finding no abuse of discretion by the district court and no clear error in its factual findings, we AFFIRM.