FILED
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**December 14, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

GWENDOLYN ALCAZAR,

    Defendant - Appellant.

No. 23-2004
(D.C. No. 1:17-CR-02380-JCH-1)
(D.N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, Chief Judge, **PHILLIPS**, and **McHUGH**, Circuit Judges.
_____

Gwendolyn Alcazar appeals the district court's denial of her request for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A), commonly known as compassionate release. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## BACKGROUND

In September 2017, a federal grand jury indicted Alcazar for possession of "500 grams and more" of a substance containing methamphetamine with intent to distribute, and with aiding and abetting, in violation of 21 U.S.C.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

§ 841(a)(1), (b)(1)(A) and 18 U.S.C. § 2. App. vol. 1, at 8. In November 2018, Alcazar pleaded guilty to the charge. The district court sentenced Alcazar within the applicable guideline range to the minimum mandatory sentence of 120 months' imprisonment, plus five years of supervised release.

On August 18, 2020, Alcazar submitted a request for compassionate release to the prison's warden. As extraordinary and compelling reasons for release, Alcazar cited the COVID-19 pandemic, her medical conditions, her father's declining health, and an "ongoing court battle" involving her five children "regarding a sexual abuse case with a family member." App. vol. 2, at 55.[1] Alcazar also noted that she has worked a job and completed classes while incarcerated. If released, Alcazar promised, among other commitments, to attend college, enroll in an out-patient program, continue her sobriety, and obtain employment.

On September 1, 2020, the warden denied Alcazar's request, noting that she "may commence an appeal of th[e] decision via the administrative remedy process by submitting [her] concerns on the appropriate form (BP-9) within 20

---

[1] To the extent we quote from sealed volumes, we have determined that the quoted material either appears in Alcazar's brief or in the district court's order attached to Alcazar's brief (which was not filed under seal), or isn't sensitive. *See* Fed. R. Civ. P. 5.2(h) (stating party waives privacy protection for own information by filing not under seal).

days." *Id.* at 65. Two days later, Alcazar submitted a request using the BP-9 form.[2]

On October 6, 2020, the warden denied Alcazar's second request, explaining that if she was not "satisfied with this decision, [she could] appeal to the *Regional Director at Bureau of Prisons*" and indicating that her "appeal must be received in the Western Regional Office within (20) days." *Id.* at 66–67 (emphasis added). This instruction complied with the applicable regulation, 28 C.F.R. § 542.15(a), which states:

> An inmate who is not satisfied with the Warden's response may submit an appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response. An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response.

Next, according to Alcazar, she tried to appeal the warden's second denial to the Bureau of Prisons Office of General Counsel (OGC), but the prison did not give her the proper paperwork and ultimately "told [her] it was too late to appeal." Op. Br. at 10. Even so, Alcazar asserts that she completed and sent the new forms to the OGC but did not receive a response. As the district court observed, Alcazar's remedy-history form includes a compassionate release entry with a "status date" of October 13, 2020, with

---

[2] Alcazar's September 3, 2020 request is on a BP-229(13) form but the district court noted that this is often called a BP-9 form.

"CLD"[3] listed as the status, but without any further detail. App. vol. 2, at 123. In the proceedings before the district court, the government asserted that Alcazar had not appealed the warden's second denial, as she had claimed.

In the district court, Alcazar then moved for compassionate release under § 3582(c)(1)(A)(i). Her bases for release mirrored those provided in her initial letter to the warden: her health conditions, her severe obesity, the prison's policies making her obesity less manageable, her heightened susceptibility to COVID-19, her history of self-harm, her good behavior in prison, and her need to care for her father and children. *Id.* at 123, 129. The government did not challenge the legitimacy of Alcazar's diagnoses or medical conditions which include: "obesity, chronic hepatitis C, bipolar disorder, PTSD, amphetamine related use, major depressive disorder, anxiety, and borderline personality disorder." *Id.* at 123.

In its sealed order, the district court dismissed without prejudice Alcazar's motion for failure to exhaust her administrative remedies. The court explained, "Even if appealing to the OGC before the regional director was not an issue, the record does not contain evidence of Ms. Alcazar's appeal to the OGC." *Id.* at 126; *see also* 28 C.F.R. § 571.63(b) (categorizing the General Counsel's denial of an inmate's request under § 3582(c)(1)(A) as "a final

---

[3] This acronym appears on Alcazar's remedy-history form, but neither the record, the parties' briefs, nor the district court's order indicate what "CLD" represents.

administrative decision"). Because Alcazar had the burden to show exhaustion and failed to explain the significance of the October 13, 2020 entry on her remedy history form, the district court ruled that the "record's silence on the alleged OGC appeal comes at Ms. Alcazar's expense." App. vol. 2, at 126.

The district court also declined Alcazar's request for an evidentiary hearing on exhaustion, explaining that "the resolution of that hearing would probably take longer than the dismissal without prejudice and Ms. Alcazar completing, with documentation, the BOP's administrative remedy procedure." *Id.* at 127 n.1.

In the alternative, the district court concluded that Alcazar's motion failed on the merits because Alcazar had not established extraordinary reasons warranting a sentence reduction. Specifically, the court explained that medical conditions rarely meet the extraordinary requirement. In support, the court noted that courts routinely deny relief: based on COVID-19 to vaccinated incarcerated persons; and to individuals, like Alcazar, who are classified at Care Level 1 or 2 on the BOP's four-level medical classification scale. The court also found that the record did not show that Alcazar's release was necessary to preserve the life of her elderly father or to protect her children from alleged abuse.

Alcazar timely appealed.

5

**STANDARD OF REVIEW**

We review a district court's order denying a § 3582(c)(1)(A) motion for abuse of discretion. *United States v. Hemmelgarn*, 15 F.4th 1027, 1031 (10th Cir. 2021). "A district court abuses its discretion when it relies on an incorrect conclusion of law or a clearly erroneous finding of fact." *Id.* (quoting *United States v. Battle*, 706 F.3d 1313, 1317 (10th Cir. 2013)).

**DISCUSSION**

Alcazar challenges the district court's order dismissing her motion on two grounds: (1) that the district court erred in concluding that she had failed to exhaust her administrative remedies and (2) that the district court erred in concluding that her motion failed to establish extraordinary and compelling reasons for her early release.

Because the government has withdrawn its argument that Alcazar failed to exhaust her administrative remedies, we will assume for purposes of this appeal that she adequately exhausted those remedies.[4] Our inquiry thus focuses on the district court's merits determination.

---

[4] In withdrawing its exhaustion argument, the government explained:

> In preparing for oral argument, . . . the undersigned learned that the Department of Justice has taken the position that the 'lapse' provision of § 3582(c)(1)(A) allows a defendant to file a motion for compassionate release once thirty days have passed after the warden receives a request, regardless of whether the warden acts on the request or not, and without requiring the defendant to exhaust the BOP's administrative process.

(*footnote continued*)

6

Federal courts are generally forbidden from modifying a term of imprisonment after it has been imposed. *Freeman v. United States*, 564 U.S. 522, 526 (2011) (quoting § 3582(c)). But this "rule of finality is subject to a few narrow exceptions," including when a defendant moves for a sentence reduction under § 3582(c)(1)(A). *United States v. Maumau*, 993 F.3d 821, 830 (10th Cir. 2021) (quoting *Freeman*, 564 U.S. at 526).

District courts follow a three-step test in evaluating § 3582(c)(1)(A) compassionate-release motions. *Id.* at 831. First, the court "must find whether extraordinary and compelling reasons warrant a sentence reduction." *Id.* (cleaned up). Second, the court "must find whether such reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* (cleaned up). And third, the court must "consider any applicable [18 U.S.C.] § 3553(a) factors and determine whether, in its discretion, the reduction authorized by steps one and two is warranted in whole or in part under the particular circumstances of the case." *Id.* (cleaned up). District courts may deny a compassionate-release motion on any of the three steps without addressing the others. *United States v. Hald*, 8 F.4th 932, 942–43 (10th Cir. 2021). Only the first requirement—extraordinary and compelling reasons—is at issue on appeal.

---

Appellee's letter to the court at 2, ECF No. 11044695 (Nov. 14, 2023).

First, Alcazar asserts that the district court disregarded her high susceptibility to severe illness or death from another COVID-19 infection based on her medical conditions: obesity, high blood pressure, anemia, hepatitis C, post-traumatic-stress disorder, borderline diabetes, borderline personality disorder, bipolar disorder, major depressive disorder, amphetamine-related disorder, and "long Covid." Op. Br. at 33–34.[5] She also notes that she "ha[s] attempted suicide and was placed on suicide watch." *Id.* at 34. But the district court did address the risks associated with COVID-19 along with all of Alcazar's medical conditions. The district court first cited several cases in which courts in this circuit have denied compassionate release to incarcerated persons (1) who have contracted COVID-19, (2) "with comorbidities who have contracted and recovered from COVID-19," (3) "who suffer from similar conditions and diagnoses" as Alcazar, and (4) "who are classified at Care Level 1 or 2 on the BOP's four-level medical classification scale." App. vol. 2, at 128–29 (collecting cases).

Applying these principles, the district court concluded that because Alcazar is vaccinated, has recovered from COVID-19, and is classified at health Care Level 1 and mental health Care Level 2, that her diagnoses and conditions do not "go beyond what is usual, regular, or common." *Id.* at 129.

---

[5] We can't tell from Alcazar's brief how many times she has been infected with COVID-19. *Compare* Op. Br. at 14 (three times) *with* Op. Br. at 33 (two times).

Thus, the court ruled, she did not meet the extraordinary and compelling standard. *Id.* Alcazar does not challenge the court's factual findings or the cases that the district court relied on in so ruling. Nor does Alcazar cite any case in which a court has found, under circumstances much like her own, that extraordinary and compelling circumstances exist. Accordingly, we see no abuse of discretion.

Second, Alcazar asserts that the district court should have granted her motion based on her allegation that her prison facility had a forced "herd immunity" policy. Op. Br. at 34. Because Alcazar did not provide the district court with any evidence of this accusation, the district court did not abuse its discretion in declining to grant Alcazar compassionate release on this basis.

Third, Alcazar states, "[i]n light of all of the factors that she informed the district court, which are stated above in the fact section of this brief, it was arbitrary and capricious for the district court to refuse to release her to serve the remainder of her sentence outside the BOP facility that was unable to protect her" from COVID-19. *Id.* Aside from her health concerns, these "factors" included unsupported allegations that the BOP provided her inadequate medical care (related to COVID-19 and an injury she received from falling out of a top bunk) and unsupported claims that she is the only person who can protect her children from alleged abuse by a family member. But Alcazar cited no evidence supporting these allegations. App vol. 2, at 129. Nor does she cite any caselaw indicating that a court has ever granted

9

compassionate release under similar circumstances. Alcazar also does not indicate how the district court erred in concluding that the record did not support these allegations. Thus, we see no abuse of discretion.

## CONCLUSION

For these reasons, we affirm the district court's denial of Alcazar's motion for compassionate release.

Entered for the Court

Gregory A. Phillips
Circuit Judge